No. 7994.

THE CLEVELAND, COLUMBUS, CINCINNATI AND INDIANAPOLIS RAILWAY CO. *v.* NEWELL.

RAILROAD.—*Speed of Trains.*—*Velocity Practiced with Consent of Community no Criterion.*—*Instruction.*—On trial of an action against a railroad company for injuries to the plaintiff, while riding as a passenger in a car of defendant's train, which was thrown from the track by a broken rail, or the breaking of a rail, an instruction undertaking to define a safe rate of speed by its comparison with the velocity "practiced before, with the tacit consent of the community, and without accident," assumed a false criterion. and was erroneous.

SAME.—*Broken Rail.*—*Presumption.*—*Instruction.*—*Burden of Proof.*—On such trial, it was error to instruct that "There is no presumption that the rail was broken before this train reached it, and, if the plaintiff claims that it was, the burden of proof is upon him."

SAME.—*Negligence.*—In such case, a *prima facie* presumption of negligence arises against the railroad company, to be overcome by proof.

The Cleveland, Columbus, Cin'ati and Indianapolis R. W. Co. v. Newell.

SAME.—The usual practice for a considerable period would tend to prove what speed on a road is possible, with reasonable safety.

SAME.—*Query.*—When a rail has been cracked, or broken, by a passing train, is not the company guilty of negligence in not causing it to be examined and repaired before the passage of another train?

From the Marion Superior Court.

*H. H. Poppleton, J. T. Dye* and *A. C. Harris,* for appellant.

*B. Harrison, C. C. Hines* and *W. H. H. Miller,* for appellee.

FRANKLIN, C.—Appellee sued appellant for injuries received while being carried on a passenger train by appellant; issue by a denial; trial by jury; verdict for appellant; motion for a new trial overruled, and judgment for appellant; appeal to general term, and judgment of special term reversed; appeal to this court, and the error assigned here is the reversal by the general term of the judgment of the special term; and this brings in review the error assigned in the general term, which was the overruling of the motion for a new trial.

The only questions presented to the court in general term, and that are insisted upon in this court, arise upon the instructions to the jury. The instructions, six, eight, ten, eleven and thirteen, given by the court, were excepted to by appellee's counsel, and upon them the court below in general term reversed the judgment in special term. Questions as to instructions five, six, seven and eight, asked by appellee's counsel, and refused, were also reserved. But as these instructions, which were refused, were substantially contained in those given by the court, and equally as favorable as the appellee asked, their refusal was harmless. *Crandall* v. *The First National Bank, etc.,* 61 Ind. 349; *Steeple* v. *Downing,* 60 Ind. 478; *The Ohio, etc., R. W. Co.* v. *Dickerson,* 59 Ind. 317; *The City of Indianapolis* v. *Gaston,* 58 Ind. 224.

We see no error in the sixth, tenth and thirteenth instructions given. The latter clause of the eighth instruction reads as follows: "Whether the rate of speed adopted in this instance was unsafe, is for you to determine as a question of fact. The law does not fix the rate of speed at which cars may be run upon a railroad, except to require that it shall not be excessive or dangerous. Whether it is so or not, will depend, to some extent, upon the safeguards which are adopted to prevent accidents; and, in determining whether the rate was unsafe, on the occasion in question, you should consider whether the velocity was greater than *that which had been practiced before, with the tacit consent of the community, and without accident.*"

This clause in the instruction well says that the law requires that the cars shall not be run at an excessive or dangerous speed; but how is the question of excessive or dangerous speed to be settled? Certainly not by proving the tacit acquiescence of a community in a certain rate of speed, but by proving the fact as to what rate of speed would be reasonably safe in the case in controversy. No rate could be established, consistent with the idea of railroad travel, that would be absolutely safe, though it should be as near so as human wisdom and skill can reasonably make it. A safe rate of speed on one railroad line is not a definite criterion for another, unless the latter is in a similar condition to the former. What would be a safe speed on one railroad line might be a very dangerous speed on some others. The alignment and grades of a road, as well as the road-bed, superstructure and rolling stock, are all to be considered with reference to their perfectness in establishing that highest speed with which it would be safe to run cars over the road. The railroad companies have exclusive control of all these considerations, and each one establishes its own speed at its own risk, and if it establishes a dangerously high speed, it is liable for any injury resulting on account

The Cleveland, Columbus, Cin'ati and Indianapolis R. W. Co. v. Newell.

thereof, and can not shield itself from responsibility under the patronage and acquiescence of the community.

The fact that trains have been run over a railroad line at a high and dangerous rate of speed, without injury, is by no means conclusive that it will continue to be so, and thereby relieve the company from liability on account thereof. The tacit acquiescence in, and toleration of, a wrong for the time being, by the community, does not justify a repetition and perpetuation of the wrong.

The only authority referred to by counsel, in support of this part of the eighth charge, is the case of *Wilds* v. *The Hudson River R. R. Co.*, 29 N. Y. 315, from which, by the similarity of the language, this clause of the instruction appears to have been drawn. But the learned judge in making this extract from Judge DENIO's opinion in that case, omitted a very important part thereof, and that is, that "If it be clearly shown, that on the occasion in question the velocity was not greater than that which had been usually practiced for a considerable period." With this qualification, the usual practice for a considerable period would tend to prove the reasonable safety of the speed. Without this qualification, any rate of speed that had been accomplished without accident, would be a license to continue the same velocity, which certainly is not the law. The opinion of this distinguished judge, in *Wilds* v. *The Hudson River R. R. Co.*, *supra*, goes to the very verge of, if not beyond, the right point upon this question. The community may, for a considerable length of time, uncomplainingly tolerate a wrong, which they are remediless to correct, without that toleration amounting to a *tacit consent* to its continuance. But it may be questionable whether that case can be considered as authority in the case under consideration. In that case the injury occured to an outsider at a street crossing, where there was no contract for safety existing between the railroad company and the injured party. In this case

the injured party was travelling in the company's cars, under a contract with the railroad company for safe transit.   In that case there was no presumption of negligence on the part of the company arising out of the fact of the injury. In this case there was such presumption; hence the more strict proof in this case on the part of the company to rebut such presumption.

This clause in the instruction is limited to the means of determining what rate of speed would be excessive or dangerous, and does not embrace the questions as to what was the rate of speed, or whether it was excessive or dangerous.   We, therefore, do not decide anything upon either of these questions.

The eleventh instruction reads as follows : "It appears that the west-bound express passed over the rail a short while before the east-bound train, in which Mr. Newell was being carried, was thrown from the track.   There is no presumption that the rail was broken before this train (on which Mr. Newell was riding) reached it, and, if the plaintiff claims that it was, the burden of proof is upon him."

In order to understand the application of this instruction it is necessary to refer to the facts as established by the evidence.   The injury complained of occurred by the car in which appellee was riding leaving the track, caused by a broken, or the breaking of, a rail.   The injury occurred about 9 o'clock A. M.   The watchman passed over the track early that morning, and caused this rail to be put in the place of another broken rail.   The eastern express train had passed over the rail between the time of its being put in and the passage of the train in which appellee was riding.

Counsel for appellee insist that the rail may have been cracked or broken by the passage of the eastern express, and that the appellant was guilty of negligence in not having it examined, and repaired if injured, before the passage of the train in which appellee was riding.

This theory of counsel may be too strong against the railroad company. To require it to examine its track between the passing of its trains, would be wholly impracticable, and a failure to do so would not be *per se* negligence. This instruction, however, does not fully come up to this proposition. This instruction is objectionable for assuming a state of facts to exist, without leaving them for the jury to determine from the evidence.

The law is well settled, that, where a passenger is injured in consequence of a train running off of the track, the law raises, *prima facie*, a presumption of negligence against the railroad company. *Curtis* v. *The Rochester, etc., R. R. Co.*, 18 N. Y. 534; *Edgerton* v. *The New York, etc., R. R. Co.*, 39 N. Y. 227; *Feital* v. *Middlesex R. R. Co.*, 109 Mass. 398; *Sherlock* v. *Alling*, 44 Ind. 184; *The Pittsburgh, etc., R. R. Co.* v. *Williams*, 74 Ind. 462.

This injury occurred by the breaking of a rail in the railroad track, and, by proof of the fact that the injury occurred on account of some defect in the road, its machinery or management, the general presumption of negligence would attach to the company, and it would be required to rebut that presumption by explaining and proving that there was no negligence on its part. Now, to say that no presumption existed in relation to specific facts tending to constitute negligence, and that the onus of those facts was changed to the injured party, would be to rebut and destroy the general presumption, without any explanation or proof whatever. The company must rebut the general presumption of negligence, by proof, and to say the injured party must establish the facts, by proof, which constitute the negligence, without the general presumption being removed, would be strange logic, and certainly erroneous reasoning, and would tend to confuse and mislead the jury.

We think the court in special term erred in its instruction to the jury, for which a new trial ought to have been granted.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment below, at general term, be, and it is hereby, in all things affirmed, with costs.