The Chicago, Peoria and St. Louis Railway Company

*v.*

Frank P. Lewis.

*Filed at Springfield, April 3, 1893.*

1. Common Carriers—*of the care required for the safety of passengers.* On the trial of an action by a passenger against a railway company for a personal injury, the court, at plaintiff's request, instructed the jury that common carriers of passengers are required to use all means that care, vigilance and foresight can reasonably do, in view of the character and mode of conveyance adopted, to prevent accidents to passengers. The court, at defendant's request, instructed the jury that "while common carriers of passengers are held to the highest degree of care and prudence which is consistent with the practical operation of their road, and the transaction of their business, they are not absolute insurers of the personal safety of the passengers." *Held,* that taken together these instructions stated the law correctly.

2. Railroads—*rate of speed of trains—track apparently safe.* On the trial of an action brought by a railway passenger against the company

for a personal injury resulting from negligence in running its train at a high speed over a defective road, the court refused an instruction for the defendant, which told the jury that if the track was in "apparently good and safe condition," etc., "and the train was in charge of an experienced engine driver and conductor, and was well and carefully managed, etc., that the defendant was not liable," etc. *Held*, properly refused, as it was not enough that the track was apparently in a good and safe condition. If there were defects rendering it unsafe, which might have been discovered by proper care and skill, it was the duty of defendant to have discovered them, and thus avoid injury to the plaintiff.

3.  When the question of fact as to the unsafe condition of a railroad is fairly submitted to the jury by other instructions, they will have the right to take into consideration, in determining the question of negligence, the rate of speed at which the train was run upon the track out of repair. Nothing will justify or excuse running a train at a high rate of speed, when the track is known, or might, by the exercise of proper care, skill and diligence, be known to be in a dangerous condition.

4.  The speed of a railway train being a matter which the company may lawfully regulate and control, subject to the limitation that the hazard of railway travel be not thereby materially increased, it follows that even a high rate of speed, if the conditions of the railway track and machinery will permit it, without increasing the peril to the passenger, will not be negligence.

5.  To submit by instruction to the jury the simple question whether the speed of a railroad train was so high and dangerous as to amount to negligent management of the train, without reference to and proof of the condition of the roadway and machinery, or other attending circumstances affecting the safety of the train, is to give the jury unbridled license to find any speed they may regard dangerous to be a negligent management of the train, and is error, unless qualified and cured by other instructions. What may be due and proper care in operating a train upon one road may be the grossest negligence upon another, or under other circumstances and conditions.

6.  INSTRUCTIONS—*ignoring material facts*. In the same case it was held that an instruction asked by the defendant was properly refused, which was that if the jury believed that a servant of defendant "had passed over the track of defendant and carefully examined the same the same night of the accident, before the happening of such accident, and that no defect was then, or could then be discovered in the rails of the road-bed of the defendant," then they should find for the defendant, as it failed to include the principal subject of contention—the unsound condition of the ties and the insecure fastening of the rails to them, and in failing to require the jury to find that reasonable care had been exercised to discover defects other than in the rails, or that such defects were not in fact discovered and known.

7. In the first part of an instruction given on the trial of an action to recover damages for a personal injury resulting from defendant's alleged negligence, the material part of the allegations of the declaration, and the grounds of the plaintiff's right of recovery were set out, among which was this: "that the plaintiff was in the exercise of due care and caution," and the instruction then directed the jury, if they found these averments proved, etc., to find for the plaintiff. *Held*, that the instruction was not subject to the objection that it ignored the necessity of showing care and diligence on the part of the plaintiff.

8. EVIDENCE—*condition of railroad track after an accident.* Where a witness examines the ties of a railroad shortly after an accident, and after the old ties had been replaced with new ones, he may testify to the unsound condition of the ties found lying near the track at the place where the train was derailed, especially when he had already testified to the condition of the track on the morning of the accident. His examination of the ties, being recently after the accident and at the place of derailment, is competent testimony as tending to establish the condition of the ties at the time of the injury of the plaintiff.

9. SAME—*should be confined to the issues.* On a controversy as to the soundness of the ties on a railroad, there is no error in refusing to allow a witness to answer a question in effect whether or not there is a railroad standard as to the number of ties required to make a first-class road-bed, etc., especially where the witness in substance states everything called for by the question.

10. SAME—*time to object—too late on appeal.* A witness was permitted to testify to the condition of a roadbed of a railroad a year after an accident there. He was on the train derailed, and assisted the party injured and the other passengers out of the wreck, and testified that he then saw pieces of broken rail and some rotten ties, but his attention was not particularly directed to them, and estimated the number of rotten ties on the roadbed at one of every five. It turned out on cross-examination that the estimate was, in part at least, based upon an examination of the ties and track made by him shortly before the trial. No objection was made on the trial to this evidence, or motion to exclude the same. *Held*, that the objection came too late on appeal.

APPEAL from the Appellate Court for the Third District;— heard in that court on Appeal from the Circuit Court of Fulton County; the Hon. JEFFERSON ORR, Judge, presiding.

Messrs. WALLACE & LACEY and Mr. I. L. MORRISON, for the appellant:

Plaintiff's first instruction entirely ignores the question of care and diligence on his part. *C. & N. W. Ry. Co.* v. *Dimick*, 96 Ill. 42.

The plaintiff's sixth instruction is still more objectionable. It makes the speed of the train negligence, without reference to any other condition or circumstances. There is no general law imposing any restraint as to the rate of speed a company may run its train. It may adopt any rate without subjecting itself to liability, if it is not otherwise at fault. *W., St. L. & P. Ry. Co.* v. *Neikirk*, 15 Bradw. 172; *W., St. L. & P. Ry.* v. *Weisbeck*, 14 Bradw. 525; *I. C. R. R. Co.* v. *Hetherington*, 83 Ill. 510.

Yet this instruction assumes that it does, and from it the jury might well infer that the court authorized them to find a verdict for the plaintiff if the train was running at a high rate of speed, notwithstanding other causes or other forces, for which the defendant was in no manner responsible, intervened to produce the injury, and for the want of which it would not have happened.

That it, as well as the first instruction, is fatally defective, we call attention of the court to the following authorities: *St. L. & E. Ry. Co.* v. *Britz*, 72 Ill. 256, 260, 261; *P. & U. P. Ry. Co.* v. *O'Brien*, 18 Bradw. 28; *C. & N. W. Ry. Co.* v. *Dimick*, 96 Ill. 42; *City of Peoria* v. *Simpson*, 110 Ill. 294; *Rolling Mills* v. *Morrissey*, 111 Ill. 646; *C., B. & Q. R. R. Co.* v. *Harwood*, 80 Ill. 88, and the cases cited by the courts in these several opinions.

There is no attempt made to cure the defect in these instructions by others, and even if there had been, the objection would not have been cured, as each instruction must be complete in itself. *C. & A. R. R. Co.* v. *Robinson*, 9 Bradw. 89; *C., B. & Q. Ry. Co.* v. *Harwood*, 80 Ill. 88; *P. & U. P. Ry. Co.* v. *O'Brien*, 18 Bradw. 28; *I. C. R. R. Co.* v. *Maffit*, 67 Ill. 431.

In the sixth instruction there is not the slightest reference to any other fact or element in the case except speed, and

the attention of the jury was not directed to any other. The jury was left to take this instruction and find a verdict for the plaintiff, although he may have been standing on his head or performing other gymnastics, and irrespective of the track being good or bad, straight or crooked, such as is perfectly safe to run over at the rate of 80 to 100 miles an hour or one that is even dangerous for a train to stand upon. It also assumes that speed, *per se*, constitutes negligence, and to that extent it invaded the province of the jury. *James et al.* v. *Johnson*, 12 Bradw. 286; *L. S. & M. S. R. R. Co.* v. *Elson*, 15 Bradw. 80.

Messrs. Wright & Wright, and Messrs. H. W. Masters & Son, for appellee:

Reviewed the facts and authorities cited by appellant, contending there was no reversible error.

Mr. Justice Shope delivered the opinion of the Court.

This was an action for personal injury, alleged to have been sustained by appellee by the wrecking of a train on appellant's road upon which appellee was a passenger. The declaration consisted of two counts; in the first of which the negligence charged consisted of running the train at a high and dangerous rate of speed, whereby the cars were thrown from the track, etc.; and in the second, that appellant negligently suffered and permitted the rails to be insecurely spiked, and the ties upon which the rails rested to become decayed and unsound, so that the same became loose, and the rails broken, and that the defendant, by its servants, run and drove the locomotive engine to which the coach in which plaintiff was riding was attached, at a high and dangerous rate of speed, "and on account of the premises aforesaid, and by and through the negligence of the defendant, by its servants," it was thrown from the track, etc. Counsel file in this court their Appellate Court briefs, which are largely devoted to discus-

sion of the issues of fact, which by the judgment of that court are necessarily eliminated from the case.

It is, however, urged that the court erred in its ruling upon the admission of testimony, and in giving, refusing and modifying instructions.

The objection to the first instruction given for appellee is, that it ignores the necessity of showing care and diligence on the part of the plaintiff. The instruction is not subject to the criticism made. In the first part of it, the material allegations of the declaration, and the grounds of plaintiff's right of recovery, are set out, and among them is, "that the plaintiff was in the exercise of due care and caution," and then instructs, that if the jury find these averments proved, etc., they should find for the plaintiff.

The sixth instruction given on behalf of appellee is as follows: "The court further instructs the jury, that if you believe from the evidence that the train upon which the plaintiff was being carried at the time the injury complained of was received by him, was then and there being run by the employés of the defendant at a high and dangerous rate of speed, such speed being so high and dangerous as to become a negligent management of the train, and that the accident resulting in the injury to the plaintiff, if any such injury has been proven, was in consequence thereof, then the jury will find the issues for the plaintiff."

The objection made is, that the instruction assumes that high rate of speed, in running this particular train, might of itself, independently of any other cause or conditions, render the railroad company liable. That is, as we understand counsel, the jury were permitted to find that appellant was guilty of negligence from the speed of the train alone   This instruction, in practically the same language, was given in *I., B. & W. Ry. Co.* v. *Hall*, 106 Ill. 371, and was there held, under the facts of that case, and when taken in connection with other instructions given, not to be erroneous. It was said: "We see no objection to this in-

struction. It simply tells the jury, in substance, that if they find the train was run by the servants of the company at so high and dangerous rate of speed as to become a negligent management of such train, and that accident causing the injury of appellee resulted therefrom, they should find the issues for the plaintiff.'' We are of opinion that this instruction is not susceptible of any other or different construction. It does not attempt to determine what rate of speed would be so high and dangerous as to become negligent management of the train, but submits the question, as one of fact, for the determination of the jury. It does, however, assume that the rate of speed may be so high and dangerous as to amount to negligent management and operation of the train. It will be seen that in the Hall case, *supra*, the question of whether the ''running the train at any supposable rate of speed, without reference to any other conditions, would be regarded as negligence *per se*,'' was not presented by that record. The jury were there instructed that railway companies are permitted by law to run their passenger trains at such high rate of speed as, under all the surrounding circumstances and conditions of train, track, etc., shall comport with the rule of law requiring them to exercise a high degree of care for the safety of passengers; and whether a given rate of speed is dangerous or not, is to be determined by the surrounding circumstances, such as condition of the track, etc., and it must be such a degree of danger as is not ordinarily incident to railway travel. The court approving this instruction as a fair and accurate presentation of the law of the case, say: ''It is not perceived how any general rule can be laid down on the subject, unless it be the general proposition that, however great the speed, * * * such speed, when taken in connection with the character of the road, its grades, curves, etc., and the various other conditions necessarily affecting the question of the safety, must not materially increase the ordinary

risks and dangers incident to traveling by rail.   *   *   *   *   *
Subject to this limitation railway companies have the un-
questioned right to fix the rate of speed as they think
best." And this, as we understand, comports with the
rule established elsewhere. The instruction under consid-
eration, in view of the facts of this case, if standing alone,
would not, in our judgment, present a correct proposition.
It is difficult to perceive how the question of the danger
arising from velocity of the train could arise independently
of the conditions and circumstances surrounding. It may,
however, be that the velocity may become so great as to
overcome the strength and power of resistance of the ma-
terials used in the construction of the road and its appli-
ances. If so, it is not a matter of common knowledge to
be submitted to a jury without proof of the fact.

The speed of the train being a matter, as we have seen,
which the railway company may lawfully regulate and con-
trol, subject to the limitation that the hazard of railway
travel be not thereby materially increased, it follows, that
even a high rate of speed, if the conditions of railway and
machinery will permit it without increasing the peril to
the passenger, will not be negligence. It is obvious, that
whether railway trains may be moved at the highest rate
of speed attainable with the motive power employed and
the use of the most approved machinery and appliances,
with safety to passenger travel, is a question involving a
high degree of skill in that department. The proof of
danger from the speed of the train alone, is, in this case,
confined to the rate of speed at which the train was running
at the time of the accident, which was shown on the one
side to have been from 25 to 30 miles per hour, and on the
other from 40 to 50 miles per hour. If this instruction,
alone, is to be considered, the jury were told they might
say that upon any track, however perfect, and with the
best known machinery and appliances, that rate of speed
might amount to negligent management. And it must be

manifest, that to submit to the jury the simple question of whether the speed was so high and dangerous as to amount to negligent management of the train, without proof of the condition of the roadway and machinery, or other attending circumstances affecting the safety of the train, was to give unbridled and unguided license to find any speed they might regard dangerous, to be negligent management. What may be due and proper care in operating a train upon one road, or under certain conditions of the track, may be the grossest negligence upon another, or under other circumstances and conditions.

But while we cannot approve of this instruction considered by itself, we are of opinion that the giving of it was not, in this case, prejudicial error. By the first instruction given for appellee, the jury were told that the negligence charged in the declaration was that defendant negligently run the train upon which plaintiff was a passenger, etc., at a high, dangerous and reckless rate of speed, over a track where defendant had negligently suffered and permitted the ties, upon which the rails rest, to become decayed and unsound until the spikes, holding the rails upon the ties, became loose and the rails broken, and thereby the train of cars, etc., was thrown from the track, and the plaintiff injured, etc.; and were then told that if they believed from a preponderance of the evidence that said declaration had been proved, they should find for the plaintiff, etc. By this instruction the attention of the jury was directly called to the fact, that to entitle the plaintiff to recover, the allegation of the declaration, that the train had been run at a high and reckless rate of speed upon the track, in the condition described, must be proved. The preponderance of the evidence tended to show that at the place of the accident the ties were rotten, and the spikes loose, so as to endanger the train if run at any considerable rate of speed. While there is some controversy as to the condition of the ties and track, the preponderance of the evi-

dence tends to show the condition alleged in the declaration. One witness testifies that about one-fifth of the ties were so far decayed as to be incapable of holding the spikes; another, that he kicked a spike loose from the tie with the toe of his shoe; another, that he split a tie with a common walking stick; and the evidence tends to show that at least one tie crushed under the weight of the engine, and also that one of the rails was cracked for a considerable distance from the underside. Under other instructions given in the case, the question of fact as to the condition of the roadway was fairly and properly submitted to the jury. It seems impossible, in view of the instruction in regard to what it was necessary for the plaintiff to prove to maintain his case, and the facts as submitted, that the jury could, by this instruction, have been misled into ignoring the conditions and circumstances proved, and have predicated their verdict alone upon the speed of the train. The high and dangerous rate of speed mentioned in the instruction would necessarily, in the mind of the jury, be connected with the condition of the roadway, and the attendant circumstances proved. And they undoubtedly found, that the rate of speed shown was negligent management of the train, under such conditions and circumstances.

In this view, the jury had a right to take into consideration, in determining the question of negligence, the rate of speed at which the train was run upon the track so out of repair. Nothing will justify, or excuse, running a train at a high rate of speed, when the track is known, or might by the exercise of proper care, skill and diligence be known, to be in a dangerous condition. *C., C. C. & I. R. R. Co.* v. *Newell*, 75 Ind. 542; *O. & M. Ry.* v. *Selby*, 47 id. 471; *M. P. Ry.* v. *Collier*, 62 Tex. 318; *P., P. & J. R. R.* v. *Reynolds*, 88 Ill. 418; *White* v. *M. C. Ry. Co.*, 61 Wis. 536; *T., W. & W. Ry. Co.* v. *Apperson*, 49 Ill. 480. And so, in respect of obstructions upon the track under circumstances of danger, if excessive speed of the train has proxi-

mately contributed to the injury. *I., B. & W. R. R. Co.* v. *Hall, supra.* We are of opinion that the giving of the instruction was not, therefore, such prejudicial error as will authorize a reversal of the judgment.

It is also insisted that the court erred in instructing the jury that common carriers of passengers are required to use all means that care, vigilance and foresight can reasonably do, in view of the character and mode of conveyance adopted, to prevent accident to passengers. By the third instruction given on behalf of appellant, the jury were told that, ''While common carriers of passengers are held to the highest degree of care and prudence, which is consistent with the practical operation of their road, and the transaction of their business, they are not absolute insurers of the personal safety of their passengers,'' etc. Taken together, these instructions state the law accurately. *C. & A. R. R. Co.* v. *Arnol,* 144 Ill. 261, and cases cited.

It is next insisted that the court erred in refusing the 11th instruction asked by appellant. This instruction was properly refused, for the reason that it told the jury that if the track was in ''apparently'' good and safe condition, etc., and the train was in charge of an experienced engine driver and conductor, and was well and carefully managed, etc., that appellant was not liable, etc. It is not enough that the track was ''apparently'' in good and safe condition. If there were defects rendering it unsafe, which by the exercise of care and skill might have been discovered, it was the duty of appellant to have discovered them, and thus to have avoided danger to its passengers.

The twelfth instruction asked by appellant, and refused, is likewise faulty, in that it confines the examination made, or which the jury might find was made, by the servants of the defendant, after the passage of trains, and before the time for the next train to pass, to defects in the rails; that is, if the jury believed that, ''said servant of defendant had passed over the track of defend-

ant and carefully examined the same, the same night of the accident, before the happening of such accident, and that no defect was then or could then be discovered in the rails of the road-bed of the defendant," etc., then, etc. It nowhere excludes the principal subject of contention, that is, the unsound condition of the ties and the insecure fastening of the rails to them. It did not require the jury to find that reasonable care had been exercised, to discover defects other than in the rails, or that such defects were not in fact discovered and known. The modifications complained of, in nowise changed the legal effect of the instructions given. They were perhaps unnecessary, but can not be said to be prejudicial. It will be found upon examination, we think, that every principle contained in other refused instructions was covered by those given.

It is also urged that the court erred in permitting the witness Wright to testify to the condition of the ties which he found shortly after the accident, lying near the track, at the place where the derailment occurred. It appeared that at the time of the examination part of the old ties had been removed, and new ties put into the roadbed. The same witness had testified to the condition of the track on the morning of the injury to appellee,—the accident having occurred about 3 o'clock A. M. We are of opinion that his examination of the ties, being recently after the accident and at the place of derailment, was competent testimony, when it was offered, to go to the jury, to be considered for what it was worth by them, as tending to establish the condition of the ties at the time of the injury to appellee; and after the servants of appellant in charge of its track at that point afterwards testified (and no question seems to have been made of its correctness), that the ties found by the side of the track were not those removed, there was no motion made to exclude the testimony. *J. S. E. Ry.* v. *Southworth*, 135 Ill. 252. If its admission was erroneous, it was not reversible error.

It is also objected that the witness Walker was permitted to testify to the condition of the road-bed, as it is said, a year after the accident. This witness was on the train derailed, and assisted appellee and other injured passengers out of the wreck. He testified that he then saw pieces of broken rail and some rotten ties, but that his attention was not particularly directed to them. He estimated the number of rotten ties in the road-bed at one out of every five. It turned out on cross-examination that this estimate was, in part at least, based upon an examination of the ties and track made by him shortly before the trial. It is sufficient that no objection was interposed to this evidence, or motion made to exclude the same from the jury, and the objection comes too late on appeal.

Some question is also made in respect of the ruling of the trial court, in not permitting appellant's roadmaster to answer a question in effect as to whether or not there is in railroading a standard or rule as to the number of ties required to make a first-class road-bed, etc. There was no contest over the number of ties in appellant's road-bed, or that there was not sufficient in number to constitute it a first-class road. The controversy was in respect of their soundness only. The question was, therefore, immaterial. But looking into the record it is seen that the witness did, in substance at least, state everything called for by this question, and appellant had the advantage, if advantage it was, of the evidence sought.

Other objections are urged, which we have carefully examined, and find insufficient to authorize a reversal.

The judgment of the Appellate Court will be affirmed.

*Affirmed.*