# Richmond.

WRIGHT'S ADMINISTRATRIX v. SOUTHERN RAILWAY COMPANY.

December 11, 1902.

1. MASTER AND SERVANT—*Railroads—Rules—Failure to Enforce—Safe Place—Case at Bar.*—It is the duty of a railroad company to exercise ordinary care to furnish reasonably safe appliances and instrumentalities for the protection of its employees, and to adopt, promulgate, and *enforce* reasonable rules to promote their safety. A disregard of such rules with the acquiescence of the company, or neglect to enforce them, is tantamount to their suspension. In the case at bar, a car repairer was killed while repairing a car on a siding provided for that purpose. He was struck by a car set in motion by a shifting engine, without notice of its approach. No signal was placed on the car he was repairing, and if the rule of the company requiring such signals to be placed on cars undergoing repairs was ever sufficiently promulgated, it was disregarded so uniformly and continuously, with the knowledge and practical acquiescence of those charged with its enforcement, as to warrant the jury in finding that the company had been guilty of negligence, and hence, on a demurrer to the evidence by the defendant, judgment should have been rendered for the plaintiff.

Error to a judgment of the Circuit Court of Brunswick. county, rendered April 17, 1901, in an action of trespass on the case, wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Reversed.*

The opinion states the case.

*Everett Perkins, E. P. Buford* and *C. V. Meredith,* for the plaintiff in error.

*A. P. Thom*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of Brunswick county in an action of trespass on the case brought to recover damages for the death of J. W. Wright, who was employed as a car repairer in the shops of the Southern Railway Company. At the trial the defendant demurred to the plaintiff's evidence, the jury rendered a verdict in favor of the plaintiff for $5,000, upon which the court entered judgment upon the demurrer for the defendant, and the case is before us upon a writ of error.

The defendant worked as car-repairer in the car-sheds of the defendant in error into which ran a number of tracks upon which cars needing repair were placed. It is in proof that from 700 to 800 cars, to say nothing of other machinery, were annually repaired in the shops, necessitating the employment of a large number of workmen. J. W. Wright was at work upon track No. 3, aiding in making repairs to the drawhead of a car. In order to perform the duty assigned him, he was in the middle of the track, in a crouching position, in front of the drawhead, when a shifting engine which was being coupled to a car struck and set in motion a car between the one in the repair of which Wright was engaged, and that to which the coupling was being made, and drove it down the track, striking Wright and crushing him in such a manner that he shortly thereafter died.

It is charged that the railway company was negligent in failing to adopt, promulgate, and enforce proper rules and regulations for the guidance and control of its operatives engaged in the hazardous duties incident to employment in repair shops.

That it is the duty of a railroad company to exercise ordinary care to furnish reasonably safe appliances and instrumentalities for the protection of its employees, and to adopt,

promulgate, and enforce reasonable rules to promote their safety, there can be no question. If authority for this proposition be needed, it will be found in section 202 of the 5th ed. of Shear. & Red. on Neg.:

"A master who employs servants in a dangerous and complicated business is personally bound to prescribe rules sufficient for its orderly and safe management, and to keep his servants informed of these rules, so far as may be needful for their guidance. Thus, a railroad company is bound to regulate, by published rules, the time and manner of running its trains so as to avoid collisions, and to enable all its servants to know when a train may be expected, and thus to avoid danger. And a jury may find that it ought to have rules to protect men working underneath cars from the starting of such cars without due warning. The master is also bound to use ordinary care and diligence to enforce the rules which he has made, and disregard of such rules, with his acquiescence or neglect to enforce them, is tantamount to a suspension of the rules. A jury has no general right to find that a rule should have been adopted, without sufficient evidence that such rule was necessary and practicable." *Whitaker* v. *Canal Co.*, 126 N. Y., at p. 549, 27 N. E. 1042.

That the jury were warranted from the evidence in finding in this case that it was the duty of the railroad company to adopt such rules sufficiently appears from the facts already stated. The evidence shows a compliance upon the part of the railroad company with so much of its duty as required the adoption of rules. The evidence as to their promulgation is by no means so satisfactory, and a jury might have been warranted upon that point in finding that the rules relied upon were never so published as to bring them home to the plaintiff's intestate, and, upon a demurrer to evidence, if that were all, it might have been the duty of the court to sustain the verdict; but,

with respect to the failure upon the part of the railroad company to enforce its rules, granting that they were duly adopted and promulgated, the evidence discloses a state of facts which well warranted a jury in finding that the railroad company had been negligent.

Without going into the details of the testimony of witnesses upon this point, it sufficiently appears from the evidence of Spain and Edwards, that the rules were disregarded so uniformly and continuously, with the knowledge and practical acquiescence of those in charge of the repair shops, as to warrant a jury in imputing knowledge of the condition of affairs in this respect to the railroad company, or a want of ordinary care upon its part in the performance of its duties if it remained in ignorance of a disregard of its rules so general and long continued.

W. J. Spain, foreman of car repairs of the Southern Railway Company, at Lawrenceville, a witness on behalf of the defendant, speaking of the use of flags, was asked: "Did you ever call any of the car repairers' attention to the fact that the flags were missing?" To which he replied: "Yes, sir; I threatened to discharge them for not having the flags up. Q. In other words, you did what you could to enforce the rule? A. Exactly."

On cross-examination he was asked: "Did you ever furnish the rule to these people?" To which he replied: "No, sir; not until recently." "Q. Before Mr. Wright's death, which occurred on the 14th of January, 1900, the rules of the company were not furnished to the car repairers? A. They were not to the men, but they were furnished to inspectors and foremen on November 14, 1899."

"Q. You have stated there was great laxity about the use of flags among the employees? A. It was not permitted, and, as I stated before, we had threatened time and again to discharge

men for being so careless about the use of flags. Q. Whether you threatened or not, it prevailed? A. It did in a measure; yes, sir."

R. S. Edwards, an inspector of repairs, employed at these shops, a witness introduced in behalf of defendant, speaking of the rule which had been adopted for the protection of car repairers, was asked and answered as follows: "Didn't you know well that this rule of the company had not been observed on the part of these car repairers; that they had never observed it, and that they were very ill-provided with flags?'

"A. Well, I know there had been no rule read to the men, but the use of the flags had been there, and they had been using flags.

"Q. There had been a mighty lax and careless use of the flags?

"A. They were not as particular as they should have been.

"Q. Didn't each foreman suffer this laxity in the use of the flags?

"A. Yes, sir; it seemed to be a hard matter to make them keep the flags up.

"Q. And so hard they hadn't tried to enforce the rule?

"A. I always tried to discharge my duty. If I saw him in danger I told him of it."

There is some evidence that the flags had been, a good while before the date of the accident, distributed to the men, with instructions to place them, when at work in repairing a car, on that end of the car from which the approach of danger was to be apprehended; that when the flag was so placed it could not be removed except by the workman who had put it there, or with his knowledge and consent, and the car upon which it was placed could not be moved; but the evidence further is that those flags had in great measure disappeared; that those which remained had become so dirty and worn as to be undis-

tinguishable, and their use, as we have seen, had fallen into practical abeyance. There is evidence tending to prove that a short time before the accident the intestate, who had gone to Edwards to get some supply connected with the work in which he was engaged, was told by him that he was going to do some shifting and to look out, but it affirmatively appears that Wright was not told that the shifting engine was going on repair track No. 3, where he was at work, but only in a general way Edwards told him that he "was going over where he was to do some shifting." It is further proved that the custom on the part of Edwards was to walk down the repair track in advance of the shifting engine, and personally notify those who were engaged in repairing cars upon that track.

Without going further into the testimony, enough has been said to show that the judgment of the court sustaining the demurrer was erroneous. There was evidence sufficient to warrant the jury in finding that the railroad company had not exercised ordinary care in enforcing its rules for the orderly and safe management of a dangerous and complicated business.

The judgment of the Circuit Court must be reversed, and this court will enter such judgment as it ought to have rendered.

*Reversed.*