## CHICAGO & N. W. RY. CO. v. O'BRIEN.

### (Circuit Court of Appeals, Eighth Circuit. March 30, 1907.)

#### No. 2,446.

1. RAILROADS—INJURIES TO LICENSEE—SPEED—NEGLIGENCE.

In general, in the absence of a regulating statute or ordinance, a carrier may run its trains at such a rate of speed as it deems convenient for the conduct of its business, without being guilty of negligence per se in case a derailment occurs resulting in injuries to licensees on the train.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 879. Rights of licensee on train, see note to Chamberlain v. Pierson, 31 C. C. A. 164.]

2. SAME—QUESTION FOR JURY.

Where defendant railroad company operated a fast mail train down a descending grade of 60 feet to the mile, and at the sharpest point of a 6 degree curve at the foot of the grade, at the rate of from 70 to 75 miles per hour, without slackening speed, and the train was derailed at the curve, resulting in the death of plaintiff's intestate, an express messenger working on the train, whether defendant was guilty of negligence was for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 918.]

3. WRIT OF ERROR—EXCESSIVENESS OF DAMAGES—REVIEW.

The Circuit Court of Appeals has no jurisdiction to review an objection that the damages awarded in an action for wrongful death are excessive, though it is convinced that the trial court improperly exercised its discretion in refusing to grant defendant relief on such ground on the motion for a new trial.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 3873.]

In Error to the Circuit Court of the United States for the Northern District of Iowa.

Error to review a judgment obtained by Mary O'Brien, as administratrix of the estate of J. J. O'Brien, deceased, against the Chicago & Northwestern Railway Company.

D. E. Lyon (Lyon & Lyon, on the brief), for plaintiff in error.

R. M. Wright (Wright & Nugent and Healy & Healy, on the brief), for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. This is the second appearance of this case in this court. When it was first here, a judgment in favor of the plaintiff was reversed because the trial court refused to instruct the jury that negligence could not be inferred from the fact of accident in

an action for the death of one who was not a passenger, but whose relation to the defendant was analogous to that of an employé and governed by the same principles. Also it was doubted that there was sufficient evidence that the derailment of the train which resulted in the death of the deceased was due to the negligence of the defendant. The general features of the case fully appear in the report of our previous opinion. Railway Co. v. O'Brien, 67 C. C. A. 421, 132 Fed. 593.

At the second trial additional evidence of a dangerous rate of speed, in connection with the particular structure of the track at and in the vicinity of the place of wreck, was introduced, and the plaintiff again secured a verdict and judgment. The exceptions preserved at the trial and such of the assignments of error as were framed and set forth in the brief of counsel in the manner required by the rules of this court present but one question that requires our consideration: Did the trial court err in refusing the defendant's request for a directed verdict in its favor? In other words, was there sufficient evidence of the negligence of the defendant to require the submission of the case to the jury?

The train upon which the plaintiff's intestate was engaged as an express messenger and the wreck of which resulted in his death was a fast mail train running between Chicago and Omaha. Its schedule called for a speed of 45 miles per hour, though it does not follow that that speed was to be maintained over every portion of the track. The train was derailed a short distance west of Boone, Iowa, at the foot of a descending grade of 60 feet to the mile, and at the sharpest point of a 6 degree curve. There were but three curves as sharp on defendant's system in Iowa comprising more than 1,000 miles of railroad track, and it was the sharpest curve between Boone and the Missouri river. All other charges of negligence failing for lack of proof, the only claim left the plaintiff was that the accident was caused by a negligent rate of speed at which the train was being run by the engineer, considering the grade and the sharp curve at the bottom. Upon this question there was the following testimony for the plaintiff supplementing a description of the track and grade:

Lindell was a railway mail clerk upon the wrecked train. He had made the particular run about 60 times. For some minutes before the accident he was looking out of the side door of his car and observing the telegraph poles and other fixed objects along the right of way. After qualifying himself to testify upon the subject of speed, he said that the train was running from 70 to 75 miles per hour.

Sigafoos was an express messenger working in the express car under the directions of the deceased. He said that the train was going so fast over the curves near the point of derailment and the car was swaying so violently that nearly all of the piles of express packages were thrown down.

Dye showed his familiarity with railroad operations by testifying that he had been a railway telegrapher for about eight years. He saw the accident from a point about half a mile distant, and said that the engine was working steam in going down the hill, a thing which he had never observed before upon any of the 15 to 30 other occasions

when he saw the train at that place. The noise of escaping steam and the unusual speed attracted his attention.

Hoyt, a railway mail clerk of seven years' experience, had served upon this fast mail train for a year, and in going eastward and westward had passed over the track where the derailment occurred about every three days. On the occasion in question, and shortly before the accident, the letters were thrown from their pigeon holes at the side of the car by the violent lurching of the train. This was an unusual occurrence. He did not recall that it had ever happened before. The pigeon holes from which the letters were thrown were about seven inches in depth, with a downward slant of about an inch. He had difficulty in keeping his feet, and the clerks were tossed from side to side of the car. The train seemed to be going at a greater rate of speed than usual. He also said that he did not notice that the air brakes were applied, although if they had been the effect would have been noticeable.

Fox, a locomotive engineer with over 30 years' experience, said that a speed of 60 miles per hour down such a grade and upon such a curve would be unsafe, and the danger would be enhanced with the increase of the speed; also that the application of the brakes steadies a train when taking a curve at speed.

Dowd, a locomotive engineer, said that the purpose of applying brakes on a sharp curve is to steady the train. The testimony of Nettle and Johnson was to the same effect.

Bowles, an eyewitness who testified at the first trial, again said that the train was running with unusual speed, nearly twice as fast as on former occasions, and that, while previously this train slowed up at the descent, it did not do so at this time.

The rapid movement of trains in the carriage of freight and passengers and the mails, resulting from the insistent demands of the public and the necessities of commerce, has become a feature of our modern life, and the enterprise of the times finds expression in the train schedules of the carriers. A complete observance of these schedules, which would imply perfection in mechanism and human skill, is impossible in the practical operation of a railroad. Moreover, conditions constantly arise which as often require that some trains be rushed forward at increased speed as that others be held back in order that the business of transportation may not be unduly impeded and the engagements of the carrier may be measurably fulfilled. All of this signifies risk to life and limb of those who serve upon the train; but, if the company has been duly diligent in respect of operation, appliances, and ways, the risk is one that is assumed, and there is no recourse for a resulting injury. And so the general rule is that, in the absence of a regulating statute or ordinance, a railroad company is at liberty to run its trains at such speed as it deems convenient for the conduct of its business, and a high rate of speed is not, per se, negligence. But this rule has its limitations. For instance, there may be at particular points upon its railroad such defects in the track or such conditions of structure, though not defective, as to make the rate of speed at which a train is moving an element to be considered in determining the question of negligence. Railroad v. Bishard (C. C.

153 F.—33

A.) 147 Fed. 496, was a case of that character. A train moving at high speed was wrecked by being shunted to a siding constructed and designed for trains moving slowly or under control. See, also, Meloy v. Railway, 77 Iowa, 743, 42 N. W. 563, 4 L. R. A. 287, 14 Am. St. Rep. 325. There is an analogy in passenger cases, though the rules governing liability are different. Railway v. Lewis, 145 Ill. 67, 33 N. E. 960. In Railway Co. v. Clowes, 93 Va. 189, 24 S. E. 833, the court, after observing that as matter of law mere rate of speed, though unusual, is not negligence, said:

> "Without doubt a rate of speed may be dangerous, taken in connection with other circumstances; as, for instance, the condition of the track, which would be entirely safe under other circumstances. The degree of curvature may be such as to render more than a given rate of speed dangerous, and a dangerous rate of speed is negligence."

The evidence in this case on behalf of the plaintiff, the substance of which has been given, is harmonious and of a substantial character, and in our opinion it is sufficient, being believed by the jury as against the countervailing evidence, to support the conclusion that the train was being negligently operated by the engineer in view of the unusual and excessive speed, the descending grade, and the sharp curve at the bottom. A statute of Iowa permits a recovery, although the deceased and the engineer were fellow servants.

Complaint is made of the amount of damages awarded. The attention of the trial court was directed to this matter by a motion for a new trial, which was overruled. We agree with counsel that the award is excessive, and that the defendant has been thereby deprived of its property to that extent; but it has been conclusively settled that the sole remedy for such a grievance is by appeal to the judgment and discretion of the trial court. Its refusal to act is final.

The judgment is affirmed.