# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

### SOUTHERN RY. CO. v. COOK.

(Circuit Court of Appeals, Fourth Circuit. September 15, 1915.)

#### No. 1349.

1. PLEADING ☞64—DECLARATION—SEPARATE CAUSES IN ONE COUNT.

In an action against a railroad company for the death of a section foreman, killed by a train, a count in the declaration alleging negligence of defendant in failing to keep a lookout, in failing to give warning signals, and in running at a dangerous rate of speed *held* not demurrable, as stating separate and distinct causes of action, since, while neither failure to give signals nor high speed will alone ordinarily constitute actionable negligence in respect to a track workman, either may be negligent under certain conditions, and both would aggravate the negligence of running without a lookout.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 134–137; Dec. Dig. ☞64.]

2. MASTER AND SERVANT ☞258—ACTION FOR DEATH OF SERVANT—PLEADING.

A second count, alleging negligence in failing to promulgate and enforce reasonable rules for the protection of decedent, and in running the train at a dangerous speed around a curve in a cut, without giving any signal or keeping a lookout, *held* not demurrable, in that it did not specify what the rules should be; its meaning being evident from the other allegations.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 816–836; Dec. Dig. ☞258.]

3. MASTER AND SERVANT ☞286—ACTION FOR DEATH OF SERVANT—QUESTIONS FOR JURY.

Evidence tending to show negligence in the running of a train by which a section foreman was killed *held* sufficient to justify the court, in an action for the death, in refusing to direct a verdict for defendant, and in submitting the case to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 816–836; Dec. Dig. ☞286.]

4. MASTER AND SERVANT ☞278—ACTION FOR DEATH OF SERVANT—EVIDENCE OF NEGLIGENCE—VIOLATION OF RULES.

Although a rule of a railroad company with respect to the speed of trains when passing a station was intended primarily for the protection of trains at a cross switch, yet where it also affects the safety of employés working on the track and is generally observed, they are entitled to rely on it, and its violation in a particular instance is evidence of negligence toward them.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. ☞278.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

226 F.—1

5. DEATH ☞104—INSTRUCTIONS—MEASURE OF DAMAGES.

Instructions, in an action for the death of an employé, as to the damages recoverable for the benefit of his widow and children, considered and approved.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 142-148; Dec. Dig. ☞104.]

Knapp, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of Virginia, at Danville; Henry C. McDowell, Judge.

Action at law by C. S. Cook, administrator of W. M. Poteat, deceased, against the Southern Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

William Leigh, of Danville, Va., and R. B. Tunstall, of Norfolk, Va., for plaintiff in error.

B. H. Custer and Harry Wooding, Jr., both of Danville, Va., for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. The plaintiff, as administrator of the estate of W. M. Poteat, recovered judgment against the Southern Railway Company for the negligent killing of Poteat while employed as a section foreman.

[1] The first question to be decided is whether the District Judge was right in overruling the demurrer to the first and second counts of the declaration. The allegation is made in each of the counts that Poteat as section foreman was on the track in the discharge of his duties, that the defendant either knew or should have known that he was there, and that one of the defendant's trains engaged in interstate commerce struck and killed him. The first count charges negligence to the defendant (1) in failing to keep a proper lookout; (2) in failing to give proper warning of the approach of the train; and (3) in running its train at a dangerous and reckless rate of speed. There is no allegation that the train was not running on its schedule time. The demurrer was as follows:

"(1) Each count in the declaration contains several allegations of duty, a part of which impose no obligation on the defendant, and attributes the injury complained of to the cumulative effect of all as the approximate cause of the injury. In each count the speed of the train is set out as one of the grounds of negligence, and the failure to sound its whistle and ring its bell is set up as negligence. These acts and omissions were not negligence.

"(2) The second count alleges the failure to have or to obey any proper rules or regulations, etc.; but it does not allege what rules or regulations there should have been, or that the failure to have them approximately caused the injuries complained of."

To support the demurrer, the defendant relies on a rule of pleading thus laid down by the Supreme Court of Appeals of Virginia in N. & W. Ry. Co. v. Stegall, 105 Va. 538, 54 S. E. 19.

"It is clear, therefore, from the authorities, that the defendant was not guilty of actionable negligence in pushing the train in question over its trestle, and was under no obligation to keep a lookout on the end of its

cars, or, in anticipation of decedent's presence on the trestle, to provide for his safety. It was the duty of the defendant, it is true, to observe the speed ordinance of the city of Bristol; but the alleged violation of that ordinance is commingled with the averments that the defendant was derelict in its duty to the decedent in pushing, instead of pulling, its train across the trestle, and in not stationing a lookout on the end of the cars, to the combined effect of all of which the injury complained of is ascribed as the proximate cause. We are of opinion that a count in a declaration thus blending allegations of duty, only one of which imposes any obligation upon the defendant, and attributes the accident to the cumulative effect of all as the proximate cause, does not conform to the reasonable rule of pleading applicable to this class of cases, which requires that the duty alleged to be owing from the defendant and the acts of negligence relied on shall be stated with sufficient particularity and clearness to enable the defendant to understand the nature of the charge that he is called upon to answer."

At the argument it was conceded that the allegation contained in the declaration of failure to keep a lookout was good as an allegation of actionable negligence. The inquiry then is whether this good allegation in the first count is so blended with the other separate and distinct allegations of running at an excessive speed and failure to give signals, which it is insisted do not constitute negligence, as to bring the count within the rule laid down in the case cited.

High speed alone is not negligence. The general rule is that a railroad company must be allowed to run its trains at such speed as seems to be convenient for the conduct of its business. But the rule has the limitation that the company cannot run its trains at a speed which, in view of special circumstances, subjects its employés or others to unusual and unnecessary peril. These circumstances may be the presence of defects in the track, or curves, or other structures, or some negligent act or omission of the company, such as having no lookout. Railroad v. Bishard, 147 Fed. 496, 78 C. C. A. 62; Meloy v. Railroad, 77 Iowa, 743, 42 N. W. 563, 4 L. R. A. 287, 14 Am. St. Rep. 325; Railway v. Lewis, 145 Ill. 67, 33 N. E. 960; New York, C. & St. L. R. Co. v. Kistler, 66 Ohio St. 326, 64 N. E. 130; Becke v. Missouri Pacific R. Co., 102 Mo. 544, 13 S. W. 1053, and note, 9 L. R. A. 157; Robertson v. Robertson, 147 Ala. 311, 40 South. 104, and note, 3 L. R. A. (N. S.) 774; 10 Ann. Cas. 1051; Atchison, T. & S. F. R. Co. v. Schriver, 80 Kan. 540, 103 Pac. 994, and note, 24 L. R. A. (N. S.) 492; N. & W. Ry. Co. v. R. S. Fritts, 103 Va. 687, 49 S. E. 971, 68 L. R. A. 864, 106 Am. St. Rep. 911; C. & O. Ry. Co. v. Clowes, 93 Va. 189, 24 S. E. 833; Chicago & N. W. Co. v. O'Brien, 153 Fed. 511, 82 C. C. A. 461.

While an engineer knows that work must be constantly done on different portions of the track, ordinarily he may assume that sectionmen will be on the lookout and protect themselves against a train run in the usual way, even at a very high speed. But this does not exempt him from the duty of keeping a lookout for trackmen who may be caught unawares, or who may be unable to get a hand car off in time, or of giving signals or stopping the train according to the circumstances; and the duty is more pressing if he is running at a high and unusual rate of speed. While, therefore, under ordinary conditions, neither high speed nor the failure to give signals, standing alone, would constitute

negligence towards workmen on the track, both would aggravate the negligence of running without a lookout. Conversely, running at a very high rate of speed without a lookout would be negligence. It is not necessary to look at each of the three different charges of negligence separately as a distinct cause of action. If they are so related, as we think they are, that taken together they constitute one or more acts of negligence, it is sufficient.

We think this conclusion not inconsistent with the rule of N. & W. Ry. v. Stegall, supra. In that case the court held that the railroad owed only the duty of observing the speed ordinance of the city of Bristol, and that it was in such relation to the deceased that it would have owed no duty to him with respect to speed, but for the ordinance. Since the one act of negligence was founded on the ordinance, the plaintiff was limited to that, and could not claim that other acts entirely lawful could be added to the statutory offense as aggravation of it. In other words, there it was the ordinance, and not the surrounding circumstances, which made the rate of speed negligence, and therefore the other allegations of failing to keep a lookout and pushing the cars across the trestle could not be treated other than as separate innocent acts alleged and relied on as negligence in themselves.

[2] The second count is more definite, and still less subject to demurrer. It alleges negligence (1) in failing to promulgate and enforce reasonable rules for the protection of Poteat, a section foreman; (2) in running the train at an unreasonable speed around a curve in a deep cut without ringing its bell or blowing its whistle, and without keeping any lookout for the protection of the decedent. It is not definitely alleged what the rules should have been, but it is sufficiently evident that the pleader meant to say that the defendant had failed to make reasonable rules as to giving signals, keeping a lookout, and regulating speed around a curve in a deep cut. It is not necessary to allege what the rules should have been. The failure to provide any reasonable rules as alleged for the conduct of the train and the hand car would be itself an act of negligence. Wright's Adm'r v. Southern Ry. Co., 101 Va. 36, 42 S. E. 913.

[3] It is next insisted that the District Judge should have instructed the jury to find for the defendant. Instead of giving that instruction, the District Judge charged as follows:

"You are further instructed that the only theory upon which the plaintiff can recover any damages at all is that the engineer violated the speed rule, or that, after having observed the danger of the section crew, he failed to use ordinary and reasonable care under the circumstances to avoid the accident."

The material inquiry, therefore, is whether there was any evidence warranting a finding of negligence as to speed, or failure to keep a lookout, or failure to use all reasonable means to stop the train in time to avoid the accident. There is no dispute as to these facts:

On March 1, 1913, Poteat, a section foreman, had been working with his crew south of Fall Creek station. In the afternoon he started with the crew of three other men to Fall Creek to perform the duty required of him of cleaning up the station and lighting the switch

lamps. About one-half to three-fourths of a mile north of the station there was a slow board requiring a maximum speed of 30 miles an hour for passenger trains, and about a half mile south of the station there was a similar slow board. South-bound passenger train No. 35, due at 4:05, was about 30 minutes late. Poteat, northbound on the hand car, stopped several times to listen for the train. The train, having passed the station, came in sight around a curve 518 feet away. When Poteat saw it he had barely got his car in motion after his last stop opposite the south slow board. He stopped his car at once and tried to get it off the track, but before he had been able to accomplish his purpose was struck by the engine and killed.

The evidence on behalf of the plaintiff tended to prove that the slow boards meant an instruction to the engineer to run at a speed not exceeding 30 miles an hour for the entire distance between the slow boards; that the train was running much faster, some of the witnesses saying about 60 miles an hour; that the speed of the train was not reduced; that the hand car was knocked 90 feet and Poteat 115 feet by the engine; that if the engineer had been running at no more than the required speed of 30 miles an hour, and had been on the lookout, he would have seen the hand car and realized the peril of the crew as soon as he turned the curve, and could have stopped the train in time to avoid the accident.

The testimony on behalf of the defendant was to the effect that the slow board required a speed not exceeding 30 miles only until the cross switch was passed, but that in fact the speed at the time of the accident was not over 30 miles; that the engineer was on the lookout, saw Poteat and the hand car as soon as he rounded the curve, and used all possible means to stop; that it was not possible to stop the train in the distance of 518 feet. This conflict of evidence made issues of fact pertinent to the decision of the case as to whether the speed of the train was more than 30 miles an hour, whether the engineer was keeping a lookout, whether he used all means at hand to stop the train as soon as Poteat was in the range of his vision, and whether it was possible to stop the train in time. If the speed was much greater than 30 miles an hour, the engineer was not at fault in failing to stop, for it is agreed that, running at a high speed, he could not have stopped in time. But he testified that his speed was 30 miles an hour, and it was for the jury to say whether his statement or that of the witnesses for the plaintiff, who placed the speed much higher, was true. Acceptance of his statement as to speed would make vital the other issues, as to whether he was on the lookout, whether he could have stopped in time, and whether he used all means at hand to do so. These issues were properly submitted to the jury in the instruction quoted.

The position is very strong that the slow boards did not limit the speed to 30 miles an hour at the place of the accident, and that therefore it was error to submit to the jury as an issue the violation of a speed rule. Fowlkes, track supervisor, testified that the slow boards meant a requirement to reduce speed to 30 miles an hour until the switch was passed, with liberty to resume speed upon passing the switch. On the other hand, Lewis, a section hand, and Currier, who

had been an engineer, testified that slow boards were meant to control speed all the way from one board to the other. It is somewhat significant that the engineer did not testify directly on the point, but did indicate that he regarded the 30-mile rate of speed required until he passed the slow board by testifying that he maintained the slow speed at the south slow board, although he was behind time. It is true no reason is apparent for requiring the reduced speed to be maintained after passing the cross switch. But the lack of reason is not controlling, for it is common knowledge that in all lines of business rules and customs which seem to have no basis in reason are sometimes prescribed and relied on. On the whole, we cannot say that the testimony afforded no ground for reasonable men to reach the conclusion that the slow boards required a maximum speed of 30 miles an hour until the slow board in front of the train had been passed.

It is contended, however, that the slow board rule was intended exclusively for the protection of trains at the cross switch, and not for the protection of sectionmen, and that failure to observe it could not be the basis of a charge of negligence towards workmen on the track. The principle is well settled that:

"Where a duty is imposed for the protection of persons in particular situations or relations, a breach of it which happens to result in injury to one in altogether a different situation or relation is not as to him actionable." St. L. & S. F. Ry. Co. v. Conarty, 238 U. S. 243, 35 Sup. Ct. 785, 59 L. Ed. 1290.

But the point of difficulty, which cannot be met by any hard and fast formula, is to segregate the persons who are within or without the protection of the duty imposed on others by rule or otherwise. The general principle is thus stated in Stevens v. Boston E. Ry. Co., 184 Mass. 476, 69 N. E. 338:

"So a rule made by a corporation for the guidance of its servants in matters affecting the safety of others is made in the performance of a duty, by a party that is called upon to consider methods, and determine how its business shall be conducted. Such a rule, made known to its servants, creates a duty of obedience as between the master and the servant, and disobedience of it by the servant is negligence as between the two. If such disobedience injuriously affects a third person, it is not to be assumed in favor of the master that the negligence was immaterial to the injured person, and that his rights were not affected by it. Rather ought it to be held an implication that there was a breach of duty towards him, as well as towards the master who prescribed the conduct that he thought necessary or desirable for protection in such cases. Against the proprietor of a business, the methods which he adopts for the protection of others are some evidence of what he thinks necessary or proper to insure their safety."

See New York, C. & St. L. R. Co. v. Niebel, 214 Fed. 952, 131 C. C. A. 248; Southern Ry. v. Davis, 15 Ga. App. 736, 84 S. E. 206.

[4] Often a rule intended primarily for one class of persons is so generally and properly conformed to by other classes that it becomes their protection also. For example, a rule requiring a train to stop at all stations is not intended for the protection of trackmen; but it would be actionable negligence for an engineer to run by a station into a hand car, not removed in time because of reliance by the section foreman on the stop. Where the rule thus directly and constantly affects the safety of others, its disobedience is evidence of negligence towards

them. While it is true that the speed rule did not warrant the decedent in relaxing his own vigilance in keeping out of the way of trains, it was one of the factors which he had a right to take into consideration in regulating his conduct; and the failure to observe it was some evidence of negligence as to him.

[5] The court instructed the jury that the damages, if any, were to be "measured by the amount which will fairly compensate for the pecuniary injury suffered by the widow and infant children as the direct result of the death of the husband and father," and then elaborated as follows:

"(1) What the earning capacity of the deceased was at the time of his death, what it would probably have been in the future, had he not been killed, and what benefit his wife and children would probably have derived therefrom as shown by the evidence. In estimating the probable earnings of decedent and probable length of his life, had he not been killed, you should consider his age, health, habits, intelligence, character and probable expectancy of life as shown by the evidence.

"(2) Consider also the care, attention, instruction, training, advice, and guidance which one of decedent's disposition, character, habits, intelligence, and devotion to his parental duties, or indifference thereto, as shown by the evidence, would probably be expected to give to his infant children during their minority, and the pecuniary benefit therefrom to said children."

A request was refused for the additional instruction that:

"The jury should deduct from the probable future earning capacity of the decedent, had he lived, the amount that he would probably have expended on himself."

The instruction given we think fully covered the point in language which has had frequent judicial approval. Excess of elaboration as to precise methods of arriving at a result, which at best can only be approximate, is to be avoided, as tending to confuse, rather than to aid, the jury.

Affirmed.

KNAPP, Circuit Judge. I dissent, upon the ground that in my judgment the trial court should have directed a verdict for the defendant.