# Richmond.

Driver's Administrator v. Southern Railway Co.

March 9, 1905.

' Absent, Cardwell, J.

1. PLEADING—*Refusal to Require Bill of Particulars—Bill of Exception.*—
   If, in an action at law, the orders of court show that the plaintiff
   moved the court to require the defendant to file a statement of its
   grounds of defense, as provided by section 3249 of the Code, that
   the court overruled the motion, and that the plaintiff excepted, this
   is sufficient, without any bill of exception, as it is all that a bill of
   exception would have shown.

2. PLEADING—*Bill of Particulars—Discretion of Trial Court.*—There is
   no inflexible rule as to the classes of cases in which a statement
   of the particulars of the plaintiff's claim, or of the defendant's
   grounds of defense, will be required under section 3249 of the Code,
   but it rests in the sound discretion of the trial court, subject to
   review if its action is plainly erroneous.

3. RAILROADS—*Non-Assignable Duties—Make up of Trains—Unauthorized
   Change by Conductor.*—The duty to properly "make up" a train for
   a trip is one of the non-assignable duties of the master, but, if on
   the trip, the conductor, without the knowledge or consent of the
   master, changes the "make up," and, in consequence of that change,
   while proceeding on his journey, an injury is inflicted on a brake-
   man of another train travelling on the same track, the master (as
   the law stood until recent changes were made), is not liable, as the
   negligence complained of is that of a fellow-servant.

4. MASTER & SERVANT—*Violation of Rules—Knowledge of Master.*—An
   employee will not be absolved from the imputation of contributory
   negligence for violating a rule of the master, made for the protec-
   tion of himself and others, because that rule is habitually disre-
   ·garded, unless it appears (and the burden is on the plaintiff to

show this) that it was done with the knowledge of the master, or he had so neglected to enforce it as to amount to its suspension.

5. RAILROADS—*Telegraph Stations—Statutory Requirements—When Not Applicable.*—The provisions of the statute (Acts 1891-'2, p. 969), requiring railroad companies to have telegraph stations along their lines, not more than ten miles apart, has no application to a collision between two trains going in the same direction between stations less than ten miles apart, as a strict compliance with the provisions of the statute with reference to telegraphing the time of arrival and departure of trains would not have avoided the accident.

6. RAILROADS—*Rear-End Collisions—Notice of Train Following—Weak Engine.*—In an action to recover damages for an injury to a brakeman, occasioned by a rear-end collision of railroad trains, it is not negligence on the part of a master to fail to notify the crew of a train that another train is to follow shortly thereafter, and to put the crew of the forward train in charge of an engine that fails to make steam and breaks down on the trip, but is otherwise safe, where the rules of the master make ample provision for protection of the crew in such an emergency.

7. RAILROADS—*Case at Bar—Proximate Cause—Violation of Rules—Fellow-Servant.*—The evidence in the case at bar shows that the proximate cause of the death of the plaintiff's intestate was his failure to comply with the rules of the company which required him, when his train was delayed more than three minutes at a regular stopping place, or when it was stopped at an unusual place, or fails to make its schedule time, to go back and put down danger signals to warn any trains moving in the same direction; but if he did comply with the rules, then the proximate cause of the accident, resulting in his death, was the negligence of the conductor of the train which collided with his train in changing the "make up" of his train, without the knowledge or consent of the master; and, as the law then stood, such conductor was his fellow-servant, and there can be no recovery.

Error to a judgment of the Circuit Court of Prince William county, in an action of trespass on the case, wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*Roller & Martz, R. A. Hutchinson, Marshall McCormick* and *Sipe & Harris,* for the plaintiff in error.

*R. Walton Moore,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This action was brought by the personal representative of Walter E. Driver to recover damages for the death of the plaintiff's intestate, caused by the alleged negligence of the Southern Railway Company prior to the constitutional and statutory changes made in the law of master and servant.

The deceased was the flagman (rear brakeman) on an extra freight train, No. 546, composed of eleven loaded and four empty cars, which left Manassas for Strasburg at 3:50 A. M. November 15, 1901, on a single track, unblocked branch line of the defendant company, which is used day and night for the movement of scheduled and unscheduled trains. From some cause the engine did not steam well that morning, and made very poor speed. When the train reached Wellington, five miles from, and the first station west of, Manassas, it remained there some twenty-five minutes for the purpose of shifting cars and getting up steam. When the train got under way it ran about half a mile, when it was stopped again for want of steam for about ten minutes. After getting up steam, it started again, and having gone a mile or a little more, and while running at the rate of twelve or fifteen miles an hour, was run into by another extra train, No. 832, going in the same direction, and the plaintiff's intestate, who was in the caboose at the rear end of train No. 546, was killed. No. 832 was under orders to go to a station west of the point where the accident occurred, and left Manassas from three-quarters to one hour after No. 546 left there. No. 832 was properly made up

at Alexandria, its starting point, but when it reached Manassas the conductor in charge of it turned the engine around, placed the caboose in front of the tender, and started the train towards its destination; and, while running at the rate of twenty-five miles an hour, ran into No. 546.

The grounds of negligence charged and relied on in the declaration, as stated in the petition for the writ of error, are that the defendant company disregarded the requirements of the statute (Acts 1891-2, p. 969), as to maintaining and operating telegraph offices for the protection of its train service; in dispatching No. 832 improperly and dangerously made up; in failing to give special warning to No. 832 to proceed under control and to look out for No. 546; and in failing to give No. 546 special orders that No. 832 was following in its dangerous make-up; and in failing to furnish an engine with sufficient power to move No. 546 in the usual way

The first assignment of error is to the refusal of the court to require the defendant company to file a statement of its ground of defense.

It is insisted by the defendant that this assignment of error cannot be considered because the ruling of the court complained of was not made a part of the record by a bill of exceptions.

While a bill of exceptions is the usual and regular mode of making the court's action upon such a motion and exception thereto, a part of the record, it is not the only mode. The order or judgment of the court may itself show all that would be necessary for a bill of exceptions to show in order to make the matter a part of the record, and if it does it is sufficient. *White* v. *Toncray,* 9 Leigh, 347; *Mitchell, &c.* v. *Baratta,* 17 Gratt. 445; *Central Land Co.* v. *Obenchain,* 92 Va. 130, 22 S. E. 876.

The order of the court shows that the plaintiff moved the court to require the defendant to file a statement of its grounds of defense; that the court overruled his motion, and that the

plaintiff excepted to the court's action. This is all that a bill of exceptions would have shown, and is sufficient.

Section 3249 of the Code provides that "in any action or motion the court may order a statement to be filed of the particulars of the claim or of the ground of defense, and if a party fail to comply with such order, may, when the case is tried or heard, exclude evidence of any matter not described in the notice, declaration, or other pleading of such party so plainly as to give the adverse party notice of its character."

There is no inflexible rule as to the classes of cases in which a statement of the particulars of the plaintiff's claim, or of the defendant's ground of defense, will be required, but it rests in the sound judicial discretion of the court. This is the construction which has been placed upon the statute by the Massachusetts courts, from whose Code it was taken. *Richmond* v. *Leaker*, 99 Va. 1, 37 S. E. 348; *Blake* v. *Ewart*, 1 Allen 248; *Commonwealth* v. *Giles*, 1 Gray, 466.

While the question of whether or not such statement shall be required to be filed is within the discretion of the trial court, to be soundly exercised under all the circumstances of the particular case, its action in granting or refusing such request will be supervised by the appellate court; but such action will not be reversed unless it is plainly erroneous. *Hite's Case*, 96 Va. 489, 31 S. E. 895; *Payne* v. *Zell*, 98 Va. 294, 36 S. E. 379.

The grounds of defense actually relied on by the defendant were those generally, if not invariably, relied on in such cases out of abundant caution on the part of counsel, viz: that the defendant was not negligent, or, if it was, the proximate cause of the accident was the negligence of the injured employee and his fellow-servants. How the refusal of the court to require such a statement as that could have prejudiced the plaintiff, we are unable to see.

The second, third and fourth assignments of error may be

considered together.   They are all based upon rulings of the
court in reference to the improper make-up of No. 832 at
Manassas.

There is no question that the conductor, McDonald, directed
it to be made up in the condition it was when it left that point.
The plaintiff sought to show that the defendant entrusted him
with the duty of making up the train, which it is agreed was
one of the non-assignable duties of the master.   The defendant,
on the other hand, claimed that the train was properly made
up by the defendant company in Alexandria, the point from
which the train started, and having been made up properly
there, the act of the conductor at Manassas in turning the
engine around, and running it backward, with caboose ahead
of the tender, was without authority of the defendant, and
in violation of its rules.   The court held that if the plaintiff
could show "authority from the master to change the order of
that train at Manassas, why then the master is liable.   It was
the duty of the master to have sent that train out in proper
form at the point of origin.   If it was changed without orders,
or contrary to the rule of the company, afterwards, they are
not liable."

This we think was a correct statement of the law.   But the
plaintiff did not avow that it could show that McDonald was
authorized by the company to make the change, nor does the
evidence which was rejected, as set out in bills of exceptions
numbered 1 and 2, when considered in connection with what
preceded and followed it, tend to show such authority.   It was,
therefore, properly rejected.

The evidence which was permitted to go to the jury over the
objection of the plaintiff, as shown by bill of exceptions No.
3, if error at all, was harmless error.   It seems to have been a
concession all through the case that the change in the make-up
of the train at Manassas was done by McDonald's orders.   The

point in controversy was not as to the fact that he ordered the change, but as to his authority to make it.

The next assignment of error is to the refusal of the court to permit the plaintiff to show that the employees of the defendant habitually disregarded Rule No. 99, which provided that "when a train is stopped at an unusual point or is delayed at a regular stop over three minutes, or when it fails to make its schedule time, the flagman must immediately go back with danger signals to stop any train moving in the same direction. At a point one-half of mile (or 18 telegraph poles) from the rear of his train he must put torpedo on the rail on engineman's side; he must then continue to go back at least three-fourths of a mile (or 27 telegraph poles) from the rear of his train and place two torpedoes on the rail ten yards apart from rail length, when he may return to a point one-half of a mile (or 18 telegraph poles) from the rear of train, and he must remain there until recalled, but if a passenger train is due within ten minutes he must remain until it arrives. When he comes in he will remove the torpedoes nearest the train, but the two torpedoes must be left on the rail as a caution to any following train. If the delay occurs upon single track, and it becomes necessary to protect the front of the train, or if any other track is obstructed, the front brakeman must go forward and use the same precautions. If the front brakeman is unable to leave the train, the fireman must be sent in his place. In descending grades or during blinding storms or fog, the flagman must go as much farther than the distance named above as will insure absolute safety, placing the torpedoes at relatively greater distances from the obstruction."

The importance of this rule not only appears from the rule itself, but is referred to and emphasized by other rules of the company. The bill of exception sets out what the plaintiff expected to prove, but it does not state that he expected to

prove that the defendant knew of such violation, or neglected to enforce the rule. On the contrary, the court certifies that certain rules of the defendant (of which No. 99 was one) were; admitted and agreed by the parties to be the identical rules in force and effect prior to and at the time of the accident. One of the grounds upon which the court bases its refusal to admit the evidence rejected, was that it was not shown that the defendant company had notice of the violation of Rule 99.

This was a sufficient ground upon which to justify its action, under the facts disclosed, even if the other grounds were insufficient, as to which we express no opinion. For it is settled law that an employee will not be absolved from the imputation of contributory negligence for violating a rule of the master, made for his own, as well as for the protection of others, because that rule is habitually disregarded, unless it appears (and the burden is upon the plaintiff to show this) that it was done with the knowledge of the master, or he had so neglected to enforce it as that his conduct amounted to a suspension of the rule. *Wright* v. *Southern Ry. Co.*, 101 Va. 36, 42 S. E. 913.

The remaining assignment of error is to the action of the court in sustaining the defendant's demurrer to the evidence.

The plaintiff insists that the defendant was guilty of negligence in failing to maintain and operate telegraph offices as required by statute.

By section 9, Chapter 614, Acts 1891-92, p. 969, it is provided that "every railroad company doing business in this State shall establish and maintain along its line, at depots or stations, not more than ten miles apart, telegraphic offices, to be operated for the protection of its train service by competent persons in the employ of such company; provided, however, that the railroad commissioner may grant such company, in special cases, permission to have its telegraphic offices at the distance from each other greater than ten but not more than fifteen miles.

It shall be the duty of every such operator to telegraph the arrival and departure of every train, as soon as it shall leave the depot or station, to the train dispatcher or other person regulating the running of trains, and if there be no such persons, then to the nearest telegraph office in the direction in which such train is going. The person receiving the telegram shall forthwith give such order or notification by telegraph as may be necessary to prevent any collision of trains."

The accident occurred within less than ten miles of Manassas, where there was a station with a telegraph office, and before the train had reached another station where there was such an office kept or required to be kept. If there had been a telegraph office in operation at the next station beyond where the accident occurred and within ten miles of Manassas, a strict compliance with the provisions of the statute would not have avoided the accident, since the statute imposed no duty upon the defendant as to the train in question until it had · reached such station.

Neither was there any negligence shown in dispatching No. 832 improperly and dangerously made up, since the train was properly made up at Alexandria and was afterwards changed by the conductor, a fellow-servant (*N. & W. Ry. Co.* v. *Houchens*, 95 Va. 398, 28 S. E. 578, 64 Am. St. 791, 46 L. R. A. 359), without authority, and in violation of the rules of the defendant.

Another ground relied on to show negligence on the part of the defendant was its failure "to give special warning orders to No. 832 to proceed under control, and to keep a lookout for No. 546, and in failing to give No. 546 special warning orders that No. 832 was following in its dangerous make-up." The evidence was that No. 832 was notified that No. 546 was ahead, and to keep a lookout for it. It was not shown to be the duty of the defendant to notify No. 546 that No. 832 was following,

and it could not have given any warning of the latter's danger-ous make-up because it did not know it.

The remaining charge of negligence on the part of the defendant is "in failing to furnish an engine with sufficient power to move No. 546 in the usual way."

"It would," as was said by the Court of Appeals of New York in *Bajus* v. *Syracuse Co.*, 103 N. Y. 312, 8 N. E. 529, 57 Am. Rep. 723, "impose upon every railroad company very embarrassing, onerous, and unjust responsibilities, if in the case of accidents with moving trains, it was to be the subject of inquiry before a jury, whether the particular accident might not have been avoided with an engine of greater or less power. If this engine, drawing a train upon a railroad, had in consequence of its imperfect condition become stalled, so that passengers and freight failed to reach their destination in time, or, if when placed at rest, it had run away in consequence of the leakage through its throttle valve, different questions would have been presented for our consideration. But, without violating any rules that have been laid down for the protection of employees, we are constrained to hold in this case that this was not as to the plaintiff a dangerous engine; that it was reasonably safe and proper, and that there was no negligence on the part of the defendant in putting it to the service in which it was employed, and that therefore upon the facts, as they now appear, the plaintiff has no cause of action against the defendant."

That seems to us to be a correct statement of the rule of law applicable to cases like this. But if the defendant had been guilty of negligence, as to the plaintiff's intestate, in using the engine as it did in its then condition, that negligence was not the proximate cause of the injury, and therefore it was not a case of concurring negligence. *N. & W. Ry. Co.* v. *Cromer*, 99 Va. 763, 792, 40 S. E. 54, and authorities cited. The

proximate cause of the death of the plaintiff's unfortunate intestate, as clearly appears from the evidence, was his own failure to comply with Rule 99 of the defendant, which made it his duty, when his train was delayed at Wellington more than three minutes, and when it was stopped west of that station at an unusual place, to go back with danger signals to warn any train moving in the same direction. If he had done this, the accident would have been avoided. It is insisted, however, that it is not clearly proved that he did not comply with that rule. We think it is; but if he did comply with it, then the proximate cause of the accident was the negligence of his fellow-servant, the conductor on No. 832, in turning his engine around at Manassas and running it backward, with the caboose ahead of it, so that the engineer did not and could not see No. 546 as he approached it. The evidence is uncontradicted, that but for this change in the make-up of the train by the conductor, No. 546 could have been seen and the collision avoided.

We are of opinion that there is no error in the judgment complained of, and that it must be affirmed.

*Affirmed.*