[No. 6709.    Decided June 11, 1907.]

TEKLA PACHKO, *Respondent*, v. WILKESON COAL AND COKE COMPANY, *Appellant*.[1]

APPEAL—REVIEW—VERDICTS. The verdict of a jury upon evidence sufficient if true to support the findings, cannot be disturbed by the supreme court.

SAME—HARMLESS ERROR. Error in admitting evidence of changes made after an accident to an employee is not prejudicial where it was not capable of injuring the party complaining thereof.

MASTER AND SERVANT — SAFE PLACE — MINES — STATUTORY DUTY. The statute requiring mine owners to furnish sufficient timbers to protect employees from "caving in" of the mine applies to the falling of a "nigger-head" or boulder in a coal mine.

SAME—INJURY TO SERVANT—CAUSE OF DEATH—EVIDENCE—SUFFICIENCY. There is sufficient evidence that the death of a miner was caused by the fall of nigger-heads in a coal mine, where a witness nearby heard the fall, and there were nigger-heads in the face of the coal and walls where deceased was working, and two or three of these were found near decedent's body immediately after his death.

SAME—ASSUMPTION OF RISKS—FAILURE OF STATUTORY DUTY— MINES. The defense of assumption of risk by a coal miner of the danger in working with an insufficient number of timbers cannot be raised where the master has violated a statutory duty to furnish sufficient timbers.

Appeal from a judgment of the superior court for Pierce county, Linn, J., entered November 15, 1906, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages for the wrongful death of an employee in a coal mine. Affirmed.

[1] Reported in 90 Pac. 436.

*F. S. Blattner* and *Frank H. Kelley*, for appellant.

*Newton H. Peer* and *Charles O. Bates*, for respondent.

Root, J.—This is an action for damages occasioned by the death of respondent's husband while employed in appellant's coal mine. Decedent was an experienced coal miner, and was at work with a partner named Wilsco, at the time of his death. The vein upon which they were at work was about three and one-half feet thick, with a pitch of about thirty-five degrees. The work was in progress in three or four pillars under the direction of an assistant foreman, who was supervising eight pillarmen, three timber packers, one chute starter, and one driver. The work in which decedent and partner were engaged required timbers to be used as props to keep the hanging and foot walls from closing together as the coal was removed. These timbers are also used to construct cogs and "batteries," so-called, to protect miners from falling coal, rock, and other dangerous substances. They are supplied in seven-foot lengths, to be cut up by the miners as required for any particular place or purpose. They are also used as "steps," extending from prop to prop for the miner to stand on while at work.

The exact manner of decedent's death is not known, as there was no eyewitness. His partner was about twenty feet distant, engaged, according to his evidence, in cutting a prop to support a "nigger-head." A nigger-head is a large, hard substance, frequently found in the coal, or partly in the coal and partly in one or the other of the walls. Ordinarily it is carefully loosed and rolled down, or is supported in place by props. They were frequently found in this mine, and the falling of one of them is alleged to be, and doubtless was, the cause of decedent's death. His partner heard a rattling noise, as from a falling stone or nigger-head, and heard a groan, and upon approaching decedent, found him dead. It was the contention of the plaintiff that decedent was killed by the falling of a nigger-head or heavy stone, which was occasioned

by reason of an insufficient supply of timber to safely protect his working place. The case was tried to a jury, which returned a verdict in favor of plaintiff, upon which judgment was entered. From such judgment this appeal is prosecuted.

It is conceded that the statute requires the furnishing of a sufficient amount of timber by the operator of a coal mine to properly protect the working places of the miners. Appellant contends that this was done in this case. Special interrogatories were submitted to the jury, which, together with the answers returned by the jury, were as follows:

"1. Was the death of Felix Pachko caused by a 'niggerhead' falling or rolling upon him? Answer: Yes. 2. Did the 'nigger-head' fall or roll upon him because it was not supported by timbers? Answer: Yes. 3. How many seven-foot pieces would have been required to safely support the 'nigger-head'? Answer: Not within knowledge of the jury. 4. Were timbers used in getting Pachko's body across the coal chute at the entrance to his working place? Answer: Yes. 5. If timbers were used to get the body across the chute, were they passed down from near the angle of the coal? Answer: Yes, one. 6. If at the time of the accident there were timbers above and near the angle of the coal on which deceased was working, state as nearly as you can how many timbers there were? Answer: One. 7. Were there other unused timbers in addition to those above mentioned which might have been used to secure 'nigger-heads' from falling? If so, how many? Answer: No. 8. At the time of his death did Felix Pachko have sufficient timbers to properly secure his working place? Answer: No."

The evidence given by the witnesses for plaintiff is not satisfactory. Her principal witness admitted that his testimony was contrary to the statements made by him touching material matters, after the accident, and was contrary to a written statement which he signed. But the record reveals sufficient competent and material evidence, if true, to sustain the material allegations of the complaint. The credibility of the witnesses was for the jury, and the trial judge not having

deemed it proper to grant a new trial, we cannot, upon the record as it is now presented, overturn the findings of the jury upon these material issues.

Numerous objections were made to the rulings of the trial court upon the introduction of evidence, but an examination fails to convince us that any reversible error was committed. One witness was asked if, on the first morning after the accident, he noticed any difference in one of the "counters" from what it had been two or three days before. An objection to this question was overruled. We think this was error, but do not believe that it was capable of prejudicing the rights of the defendant. Ordinarily, evidence should not be admitted as to changes wrought in the situation of the premises after an accident. However, a judgment should not be reversed by reason of an error which was not capable of injuring the party complaining thereof.

Several exceptions are taken to the charge given the jury. We think, however, that the instructions complained of are in accord with the former rulings of this court, and that no error was committed. Exception is also taken to the refusal of the court to give certain instructions requested by the defendant. The substance of most of these was embraced in instructions which the court gave.

It is urged that the falling of the nigger-head was not such a "caving in" as the statute requires a mining company to furnish timbers to guard against. We are unable to agree with this contention. It could make little difference whether it was the coal, or a portion of the wall, or a heavy boulder, or a nigger-head that should fall upon a miner. The result in any such case would be his serious injury or death. It was to protect, so far as practicable, against all such occurrences as might be reasonably anticipated, that the statute was enacted.

It is urged that the evidence does not show where the nigger-head came from that fell upon decedent. It does not so show definitely, but it does show that there were nigger-

heads in the face of the coal above and in the walls, and two
or three of these were found near the decedent's body im-
mediately after his death, and we think the jury were justified
in inferring that they came either from the coal or the wall,
and could have been guarded against by the use of timbers.

It is contended by appellant that the decedent was guilty
of contributory negligence. While there is evidence tending
to show that he may not have been as careful as he should
have been under the circumstances, yet, in the light of all the
evidence, it cannot be said, as a matter of law, that he was
lacking in care and prudence. Under the evidence as we find
it, this was a question for the jury.

Appellant likewise contends that the decedent, having a
knowledge of the shortage of timbers and being aware of the
dangers of the work, must be held to have assumed the risk.
Under the common law this would be true, but this court has
heretofore held that, where a person is killed or injured by
reason of the employer failing to comply with a statutory
requirement, the defense of assumption of risk cannot be in-
voked. *Hall v. West & Slade Mill Co.*, 39 Wash. 447, 81
Pac. 915; *Green v. Western American Co.*, 30 Wash. 87,
70 Pac. 310.

Finding no reversible error in the record, the judgment of
the superior court is affirmed.

HADLEY, C. J., FULLERTON, RUDKIN, CROW, DUNBAR, and
MOUNT, JJ., concur.