[No. 8656.    Department One.    December 16, 1910.]

MARY DELASKI *et al.*, *Appellants*, v. NORTHWESTERN IMPROVEMENT COMPANY, *Respondent*.[1]

APPEAL—RECORD—STATEMENT OF FACTS — TIME.   Where the last day for filing a statement of facts falls on Sunday, it may be filed on the following day, under Rem. & Bal. Code, § 252.

SAME—STATEMENT OF FACTS — CONTENTS — CERTIFICATE.   A statement of facts containing the evidence in narrative form is sufficient when certified to contain all the material evidence and testimony introduced upon the trial.

MASTER AND SERVANT—SAFE PLACE—COAL MINES—VENTILATION—EVIDENCE—SUFFICIENCY.   There is sufficient proof of failure to comply with Rem. & Bal. Code, § 7381, requiring sufficient circulation of air in a coal mine, where a battrice for the purpose of deflecting the air into a certain room was torn and defective, and one man therein lost his life and a boy became sick from inhaling poisonous gases.

SAME—COAL MINES—LENGTH OF HEADING — STATUTES — PERMISSION—BURDEN OF PROOF.   Under Rem. & Bal. Code, § 7382, prohibiting the driving of a heading in a coal mine more than sixty feet from the face of each chamber without written permission from the inspector, the burden of proof, after proof of such extension, is upon the coal mine owner to show the fact of written permission therefor.

SAME—COAL MINES—VIOLATION OF STATUTORY PROVISIONS.   It is negligence *per se* to fail to comply with the requirement of the coal mine law intended to provide a reasonably safe place for the men to work; and the duty is a nondelegable one.

SAME—STATUTORY PROVISIONS—APPLICATION.   The provisions of the coal mine act of 1888, page 41, § 15, expressly limited to "violations of this act" if not superseded has no application to later acts on this subject.

SAME—NEGLIGENCE—NEGLIGENCE OF FELLOW SERVANT—CUSTOMARY VIOLATION OF RULES.   It is no defense to an action for the death of a coal miner that it was due to the negligent act of a fellow servant in firing a blast, during shifts, contrary to the rules, where (1) there were concurring acts of negligence by the master contributing to the injury, or (2) where there had been habitual violations of the rule for three months, from which knowledge of the practice would be imputed to the master.

[1]Reported in 112 Pac. 341.

Same—Contributory Negligence. A coal miner is not guilty of contributory negligence, as a matter of law, from the fact that he returned to work fifteen minutes after he heard a blast and saw smoke, and remained at work three-quarters of an hour, when he was on his way out when overcome by gas.

Appeal from a judgment of the superior court for King county, Tallman, J., entered May 10, 1909, in favor of the defendant, upon granting a nonsuit in an action for damages for the wrongful death of an employee in a coal mine. Reversed.

*W. R. Bell*, for appellants.

*Carroll B. Graves* and *Charles H. Winders*, for respondent.

Gose, J.—The appellants are respectively the surviving wife and minor children of John Delaski, deceased. They brought this action to recover damages sustained by reason of the death of the husband and father, alleging that his death was caused by the inhalation of poisonous gases negligently permitted to accumulate in the coal mine of the respondent. At the close of the appellants' evidence, a judgment of nonsuit was entered. This appeal followed.

The respondent has moved that the statement of facts be stricken and the judgment affirmed. The grounds of the motion are, (1) that the statement was filed on the ninety-first day after the entry of the judgment, and (2) that the certificate of the judge is defective in that he only certified that the statement contains "all the material evidence and testimony introduced upon the trial." A part of the evidence set forth in the statement is in a condensed and narrative form. On the 2d day of August, which was the 84th day after the time for taking the appeal had commenced to run, an order was entered giving the appellants until the 8th day of August, which was the 90th day, in which to file and serve a statement of facts. The 8th day of August fell upon Sunday, and the statement was filed and served the following day. Where the last day for

the performance of an act falls upon Sunday, it is excluded in the computation of time. Rem. & Bal. Code, § 252; *Rogers v. Trumbull*, 32 Wash. 211, 73 Pac. 381; *Bank of Shelton v. Willey*, 7 Wash. 535, 35 Pac. 411; *Spokane Falls v. Browne*, 3 Wash. 84, 27 Pac. 1077. This court has held that the testimony may be certified in the narrative form, and that a certificate like the one in the case at bar meets the requirements of the statute. *Murray v. Shoudy*, 13 Wash. 33, 42 Pac. 631. The motion to dismiss is denied.

The record presents the following material facts: The deceased, an experienced miner, was thirty-five years of age, and on the morning of the day of his death, which occurred in the afternoon of August 8, 1905, was in good health. He and his minor son, twelve years of age, were working in a coal mine at Roslyn, called mine No. 2, in room 14, on the tenth level. At twelve o'clock they retired to the entry, or incline as it is called in the testimony, to eat their lunch, and returned to their work in room 14 about fifteen minutes later. When they had reached the gangway going to their lunch, they heard a blast or shot in room 10. As they returned to their work, they observed smoke coming from rooms 11 and 12 and in the gangway. The face of the coal in room 14 where they were working was 137 feet distant from the gangway, and there was no connecting crosscut from room 12. About a half hour after they returned to their work the boy became sick and dizzy, and his father directed him to go to a point near the gangway where they had left a bucket containing coffee, and get a drink. As he was returning, his father called to him for a drink, and the boy returned to get the coffee. The father fell about fifteen feet from the face of the coal where he had been working, before the boy could return to him, was taken out of the mine in an unconscious condition, and died about four hours later without having regained consciousness. He was proceeding toward the gangway when he fell. The evidence tends to

17—61 WASH.

show that his death was caused by the inhalation of poisonous gases. He and the boy had worked in rooms 13 and 14 for about three months before the accident occurred. The foreman had directed the employees not to fire shots between shifts. The day shift was from 8 a. m. to 4:30 p. m. Notice to that effect was posted on the outside of the mine. The brattices or canvas curtains, which were hung from the roof across the gangway between rooms 13 and 14, were torn and defective. Their purpose was to deflect the air current from the gangway into and through the several rooms. It was the duty of the fire boss to see that they were kept in repair. The appended map will illustrate the working plan on the 10th level:

What we have called the gangway is designated on the map as "Haulage Road" and "10th level." The coal cars are operated along this passageway. The brattices extend from the ceiling or roof of the mine to the floor of this passageway.

We think the record discloses at least two statutory breaches of duty upon the part of the respondent. The statute, Rem. & Bal. Code, § 7381, provides that the owner, agent or operator of every coal mine shall provide in the mine

"A good and sufficient amount of ventilation for such persons and animals as may be employed therein, the amount of air in circulation to be in no case less than one hundred cubic feet per minute for each man, boy, horse, or mule employed in said mine, and as much more as the inspector may direct, and said air must be made to circulate through the shafts, levels, stables and working places of each mine."

Section 7382 provides that

"No heading shall be driven more than sixty feet from the face of each chamber, breast or pillar, unless for the reason that he deem the same impracticable the inspector gives permission in writing to extend the distance beyond sixty feet."

Neither of these provisions was complied with. As we have pointed out, there is evidence from which it may be inferred that the air was not made to circulate through rooms 13 and 14. The brattices or curtains, designed to accomplish this purpose, were defective. The respondent argues that there is no evidence that the air was not properly deflected in and around rooms 13 and 14. It seems to us that the fact that the brattices were torn and defective, that one man lost his life, and that the boy became sick and remained sick and confined to his bed for some hours from inhaling poisonous gases, is most convincing evidence that the air was not made to circulate where they were working. It is said that there is no evidence that the respondent did not have written permission from the inspector to extend rooms 13 and 14 more than sixty feet from the gangway or level. The

fact that it was so extended, and that there were no cross-cuts, was however shown. If the respondent had the written permission to so extend the rooms, it has the burden upon it of showing that fact. *Sackman v. Thomas*, 24 Wash. 660, 64 Pac. 819.

The provisions of the statute measure the respondent's duty. The legislature, in recognition of the hazards of working in coal mines, has made careful provisions for their inspection, and imposed imperative duties upon those who own and operate them. The purpose of the law is to provide a reasonably safe place for the men to work. A failure to observe these provisions is negligence *per se*. *Green v. Western American Co.*, 30 Wash. 87, 70 Pac. 310; *Hall v. West & Slade Mill Co.*, 39 Wash. 447, 81 Pac. 915; *Whelan v. Washington Lumber Co.*, 41 Wash. 153, 83 Pac. 98, 111 Am. St. 1006; *Pachko v. Wilkeson Coal & Coke Co.*, 46 Wash. 422, 90 Pac. 436; *Sommer v. Carbon Hill Coal Co.*, 89 Fed. 54. As was said in the *Sommer* case, the law is, "in effect, the measure of that reasonable care which the owner or operator of a coal mine is required to take to avoid responsibility for injuries to workmen arising from accidents;" and the duty is a nondelegable one. The appellants have cited Laws of 1888, page 41, § 15, Pierce's Code § 6523. This section of the statute has not been carried into either Ballinger's Code or the Rem. & Bal. Code, and if not superseded by the Laws of 1891, page 152 *et seq.*, has no application to any act of negligence charged or proven in the case at bar. Its provisions are expressly limited to "violations of this act." The other provisions of the statute to which we have adverted are taken from later acts.

It is said that, if any negligence is shown, it is the negligence of a fellow servant, occasioned by the violations of a working rule promulgated by the respondent and known to all of its servants. There are two answers to this contention; (1) It is shown that the respondent was guilty of concurring acts of negligence. *Sipes v. Puget Sound Elec.*

*R.*, 54 Wash. 47, 102 Pac. 1057; (2) That the rule of the company had been habitually violated for three months immediately preceding the death of the deceased. The evidence in support of the latter statement is as follows:

"Q. What was the practice or habit or were the men accustomed to shoot off blasts or shots during shifts while the men were at work? A. They were doing it at the noon hour. Q. How long had they done that? A. Well, since I had been there. Q. That you say was about three months? A. Yes, sir. Q. And where would they get their supply of powder for that purpose? A. They bring it every day. Q. The company supplied that? A. No, sir, they supplied their own powder. Q. They supplied their own powder; and that had been going on for three months? A. Yes, sir. Q. On your level—on the 10 level? A. Yes, sir."

"Evidence of the habitual violation of a rule with the knowledge of the employer is admissible to prove the abrogation of such rule. But evidence of a custom in violation of a rule will not be received unless it is shown that the custom has existed for such a length of time as to create a presumption of acquiescence therein by the defendant and knowledge thereof by the plaintiff." 6 Thompson, Commentaries on Law of Negligence, § 7773.

See, also, 1 Labatt, Master & Servant, pp. 516, 517, § 232; *Driver's Adm'r v. Southern R. Co.*, 103 Va. 650, 49 S. E. 1000.

Finally, it is contended that the deceased was guilty of contributory negligence which precludes a recovery. The argument is made that, because he resumed work at 12:15 o'clock and continued at work until about one o'clock, having heard the shot at 12 o'clock, and having seen the smoke a few minutes later, his conduct does not measure up to the standard of the average prudent man, and that his contributory negligence should be ruled against appellants as a matter of law. We have seen that he was trying to get to the gangway when overcome with gas. The mere fact that he remained at work a moment too long cannot, as a matter of law, bar a recovery. His conduct and his duty cannot be

measured with such nicety.  *Pachko v. Wilkeson Coal & Coke Co.*, and *Hall. v. West & Slade Mill Co., supra.  Pugh v. Oregon Imp. Co.*, 14 Wash. 331, 44 Pac. 547, 689, and *Hughes v. Oregon Imp. Co.*, 20 Wash. 294, 55 Pac. 119, cited by the respondent, are not in point.  In these cases the undisputed evidence showed that nearly a half hour elapsed between the time the men were notified of the fire in the mine, and to leave the mine, and the shutting down of the fan, and that all the miners could have gone out of the mine in less than half that time.  The negligence relied upon in those cases was the shutting down of the fan by the superintendent of the mine.  The cases cited by the respondent from other jurisdictions are so variant upon the facts that they are not in point, and a discussion of them would extend this opinion to an unreasonable length.  The argument that the torn and defective brattices and the absence of crosscuts between rooms 12 and 13 were not the proximate cause of the death of the deceased, but that the proximate cause of his death was his own negligent conduct, presents questions of fact rather than law.

The judgment is reversed, with directions to grant a new trial.

RUDKIN, C. J., FULLERTON, MOUNT, and PARKER, JJ., concur.