### PACIFIC COAST COAL CO. v. BROWN.

(Circuit Court of Appeals, Ninth Circuit. June 1, 1914.)

No. 2275.

On motion for rehearing. Denied.
For former opinion, see 211 Fed. 869.

PER CURIAM. In denying the petition for rehearing it need hardly be said that neither in the decision nor in the opinion filed herein did this court refuse to follow the construction placed by the Supreme Court of Washington upon a statute of the state. In none of the decisions of the Supreme Court of that state referred to by counsel do we understand the court to have held that the amended statute of the state found in section 7381 of Rem. & Bal. Code makes of such an employé as Righi in the present case the representative of the master. On the contrary, that court in the late case of Delaski et al. v. Northwestern Improvement Co., 61 Wash. 255, 112 Pac. 341, decided December 16, 1910, distinctly adjudged that the state statute *is the measure* of the company's duty. The statute of the state of 1891 (Laws of 1891, c. 81, § 9) expressly required every coal mine in the state to be kept "free from standing powder smoke and gases of every kind," which the Supreme Court of the state held, and, as we said in the opin-

ion heretofore filed herein, imposed upon the operator thereof the imperative duty of complying with that law. But the Legislature of the state saw fit to modify that statute and in lieu of it enacted section 7381 of Rem. & Bal. Code, which provides as follows:

"The owner, agent or operator of every coal mine, whether operated by shafts, slopes or drifts, shall provide in every coal mine a good and sufficient amount of ventilation for such persons and animals as may be employed therein, the amount of air in circulation to be in no case less than one hundred cubic feet per minute for each man, boy, horse or mule employed in said mine and as much more as the inspector may direct, and said air must be made to circulate through the shafts, levels, stables, and working places of each mine and on the traveling roads to and from all such working places. Every mine shall be divided into districts or splits, and not more than seventy-five persons shall be employed at any one time in each district or split: Provided, that where the inspector gives permission in writing a greater number than seventy-five men, but not to exceed one hundred men may be employed in each of said splits: Provided also, that in all mines already developed, where, in the opinion of the mining inspector, the system of splitting the air cannot be adopted except at extraordinary and unreasonable expense, such mine or mines will not be required to adopt said split air system, and the owner or operator of any coal mine shall have the right of appeal from any order requiring the air to be split, to the examining board provided for in section 7372, and said board shall, after investigation, confirm or revoke the orders of the mining inspector. Each district or split shall be ventilated by a separate and distinct current of air, conducted from the downcast through said district, and thence directed to the upcast. On all main roads where doors are required, they shall be so arranged that when one door is open the other shall remain closed, so that no air shall be diverted. In all mines where fire damp is generated, every working place shall be examined every morning with a safety lamp by a competent person, and a record of such examination shall be entered by the person making the same in a book to be kept at the mine for that purpose, and said book must always be produced for examination at the request of the inspector."

The case of Delaski et al. v. Northwestern Improvement Co., supra, involved that provision of said section 7381, requiring the owner, agent, or operator of every such mine to provide therein a good and sufficient amount of ventilation for such persons and animals as may be employed in the mine, specifying the minimum amount of air required to be kept in circulaton; and the court there found and held that the evidence in that case showed that the operator of the mine had failed to comply with those provisions, resulting in the inhalation of poisonous gases by the miner, on account of whose death therefrom the action was brought. But the court in that case was not called upon to consider, and did not consider, the concluding clause of section 7381 of the Washington Code, which reads, as has been seen:

"In all mines where fire damp is generated, every working place shall be examined every morning with a safety lamp by a competent person, and a record of such examination shall be entered by the person making the same in a book to be kept at the mine for that purpose, and said book must always be produced for examination at the request of the inspector."

In the present case the person so designated was the fire boss of the sixth level of the mine.

No decision of the Supreme Court of Washington has been cited, and we have found none, which holds that the person so required to examine every working place in the mine every morning with a safety

lamp and make the specified record is the representative of the master. Therefore, under the ruling of the Supreme Court in the case of Alaska Mining Co. v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390, and of other courts referred to in the opinion heretofore filed herein, the fire boss, Righi, must be regarded as a fellow servant of the defendant in error.

Petition for rehearing denied.