# Richmond.

POWHATAN LIME CO. v. WHETZEL'S ADMINISTRATRIX.

November 11, 1915.

Absent, Keith, P.

1. MASTER AND SERVANT—*Rules—Disregarding—Waiver.*—A rule or order continuously disregarded, with the knowledge or acquiescence of the master, is to be considered as waived by him.

2. MASTER AND SERVANT—*Assumption of Risk—When a Question for the Jury.*—Whether or not a servant knew or ought to have known of the dangerous condition of his place of work and hence assumed the risk thereof is a question for the jury, when the danger is not so open and obvious and not so apparent and continuous as to charge him with knowledge thereof as a matter of law.

3. MASTER AND SERVANT—*Leaving Place Assigned without Orders.*—A servant cannot be said to have left the place of work assigned him when the new place at which he is injured is within the scope of his employment and was so recognized by the master and his fellow-servants.

4. VERDICTS—*Construction—Case at Bar—Appeal and Error.*—Verdicts are to be liberally construed and upheld, unless so defective in form as to be uncertain in meaning. The form of the verdict in the case at bar could not possibly have prejudiced the defendant and no objection to it was made at the time of its rendition when any irregularity might have been corrected, and it should not now be disturbed.

5. INSTRUCTIONS—*Fully Instructed.*—It is not error to refuse a correct instruction, when other instructions given cover the same point.

6. INSTRUCTIONS—*Cautions to Jury—Discretion of Trial Court.*—Instructions reminding the jury that they are acting under oath and are to decide the case according to the law and the evidence are largely within the discretion of the trial court, but it is not error to refuse them when the parties could not have been prejudiced by the refusal.

7. EVIDENCE—*Other Accidents at Same Place—Collateral Issues.*—The defendant having offered evidence to show that it would have been safer for the plaintiff's intestate to have walked across a trestle behind a car than to ride on the car while crossing the trestle, it

was competent for the plaintiff to show that other accidents had happened on the same trestle to other persons who walked across the trestle behind the car. This was not a collateral issue.

8. Evidence—*Experts—Competency.*—Whether a practical housebuilder and barnbuilder is competent to give his opinion, as an expert, as to the condition of a trestle, which was a simple structure, is a question within the discretion of the trial court.

9. Evidence—*Defective Structure—Knowledge—Other Accidents.*—In order to show the bad condition of the trestle on which the accident under investigation happened and the defendant's knowledge thereof, evidence may be admitted of other accidents on the same trestle about the time of the accident under investigation.

10. Witnesses—*Competency—Coroner's Jury.*—The fact that a witness served on a coroner's jury which investigated the circumstances of the same accident now under consideration does not disqualify him from testifying as to pertinent facts which then came under his observation.

11. Death by Wrongful Act—*Mental Anguish of Widow—Evidence.*—A widow suing for the death of her husband resulting from the wrongful act or neglect of another is entitled to have the jury take into consideration her sorrow and mental anguish, and it was not error to permit her to testify that his death "made her very sad and caused her to feel that she didn't care to live."

12. Evidence—*Admissibility—Similar Occurrences.*—Evidence that the defendant had instructed its servants not to ride on cars used in lifting rock out of the quarry upon a steep track where there was no trestle and in one department of an operation, is not relevant to show that like instructions had been given as to riding cars used for a different purpose, at another place, where there was a trestle and in a different department of the operation, and hence is not admissible.

Error to a judgment of the Circuit Court of Shenandoah county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Robert H. Talley* and *Walton & Walton,* for the plaintiff in error.

*Tavenner & Bauserman* and *C. B. Guyer,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

In this action H. S. Whetzel's administratrix recovered a judgment against the Powhatan Lime Company, which is here on a writ of error. For convenience we shall refer to the appellee as the plaintiff and to the appellant as the defendant, according to their status in the lower court.

The plaintiff's intestate, who was and had been for some years an employee of the defendant, was killed while in its service on July 31, 1913. The defendant operates an extensive plant for the manufacture of lime and crushed stone. At one end of its operation is a large quarry, considerably below the surface of the ground, from which rock is supplied for the kilns and the crusher. The stone and dirt from the quarry is conveyed in cars over a narrow track to the top of a steep incline by means of a cable and hoisting engine. From the top of the hill to which they are thus brought, the cars are switched to different tracks according to their contents and consequent destination. Cars loaded with dirt go to the dirt track and on to the earth dumps; those loaded with one kind of stone go to the kilns; and those loaded with another kind of stone go to the crusher. The cars for the crusher run by gravity a distance of something over 500 feet from the hoister, crossing a trestle ten to twenty-five feet high and 255 feet in length, and are dumped near the crusher along the base of the trestle. In making this descent, as in coming up from the quarry, they are controlled and operated by cable from the hoisting engine. Sometimes these cars could be dumped by one man, who was the regular dumper, but often he had to have a man to help him. Whetzel was on his way down to the crusher, riding a loaded car, to assist in dumping it, when the trestle gave way, causing the car to go over and Whetzel to fall or jump to the ground. His death resulted. It is charged in the declaration, and there was evidence to

justify the jury in finding, that this trestle was weak, insufficiently supported, in bad repair and unsafe, and that this condition was known to the defendant.

There were eleven assignments of error. We will dispose of these in their order, and in connection therewith will make such further statement of the facts as may appear necessary for a correct understanding of the questions involved, having due regard for the rule of evidence to be applied in this court where the testimony is conflicting.

1. The first and most important assignment of error rests upon the refusal of the trial court to set aside the verdict and grant a new trial. Three distinct grounds are relied upon to support this assignment.

(a) It is claimed that the undisputed evidence shows that the plaintiff's intestate had been expressly ordered not to ride the cars over the trestle on which the accident occurred, and had been warned of the danger of doing so. Counsel for defendant conceded that the evidence to establish the promulgation of a general order or rule against riding the cars was contradicted, but contends that Whetzel had been personally ordered not to ride them, and that the evidence in this respect is free from conflict. Richards, the company's superintendent, did testify to a single instance in which he claimed to have told Whetzel that it was against orders to ride the cars; Fischel, the operator of the hoister, also testified to a statement alleged to have been made to him by Whetzel, in which the latter said Richards had told him not to ride; and Smith, a colored employee, testified to another conversation in which he said Whetzel had expressed the opinion that riding the cars was dangerous, and added that the men "had been told often enough about it." No third party was present when these three separate alleged conversations took place. Whetzel is dead, and, therefore, from the necessity of the case, neither of these three witnesses is in express terms either contradicted or corroborated by any other witness. The testimony of these

witnesses, however, upon this point, is in striking conflict with the weight of the evidence as to the practices of the men and the method of handling the cars over the trestle, all with the full knowledge and acquiescence of Richards and others superior in authority to Whetzel. It was safer to ride the cars (even if the men could have walked and kept up with them) than to attempt to follow along behind them over the open trestle with the cable a constant menace; and to have walked around over the yards from the switch to the crusher would have resulted in a loss of time which the evidence plainly shows the defendant neither contemplated nor would have permitted. Even under the quicker method of riding the cars, the defendant repeatedly insisted upon increased expedition in the dumping operations and complained that the cars were not returned as quickly as they should be. Richards testified at a coroner's inquest held shortly after the accident, and at that time, upon being asked to name any of the employees other than Whetzel whom he had notified not to ride the cars, answered: "I ordered Mr. Sonner since the accident, and also a new man the next day after the accident." At the trial of this case he testified that he had ordered others than Whetzel not to ride the cars. This statement is seriously discredited by opposing testimony. The witness, Sonner, who had charge of the dumping operations for the six months just preceding Whetzel's death, testified that everybody that he ever dumped with rode with him; that no notice was ever given to him at any time as to whether or not a man should ride those cars until after Whetzel's death; that he himself rode them nearly all the time, and without objection; that Richards was standing right around and saw him "lots of times;" that McCoy (another superior officer) saw him; that the reason for riding the cars was "to save time;" and that "they were always fussing then about our taking too much time to dump them." A number of witnesses, all of whom either had assisted as helpers or dumpers, or were in position to know

the conditions, testify strongly to the fact that the cars were regularly ridden by the dumpers over this trestle and without any protest at any time from Richards or other officials of the company.

If, however, it be conceded that the order which Richards claims to have given to Whetzel was in fact given, the case is clearly within the influence of those authorities which hold that a rule or order continuously disregarded, with the knowledge and acquiescence of the master, is to be considered as waived by him. The law in this respect is concisely and comprehensively stated in the case of *Southern R. Co.* v. *Johnson,* 111 Va. 504, 69 S. E. 325, Ann. Cas. 1912 A, 81, as follows: "The correct principle deducible from the authorities with respect to waiver or suspension of a rule by way of estoppel from acquiescence may be stated as follows: 'The burden is upon the plaintiff to establish three elements, all of which must concur: (1) The violations must have been so frequent as to become habitual; (2) the violations must have been known, or by the exercise of ordinary care should have been known, by the employee or employees charged with the duty of enforcing the rules involved; (3) the employee charged with the duty of enforcing the rules, being thus aware of its habitual violation, took no steps to secure and compel an observance,'" citing *Wright* v. *Southern Ry. Co.,* 101 Va. 36, 42 S. E. 913; *Driver* v. *Southern Ry. Co.,* 103 Va. 650, 49 S. E. 1000, and *Lane Bros.* v. *Seakford,* 106 Va. 93, 55 S. E. 556. See also comprehensive note to *Southern R. Co.* v. *Johnson, supra,* 16 Va. L. Reg. 681. The instant case is brought fully and clearly within the doctrine, as stated in the above authorities, by evidence which was not only sufficient to warrant the jury in its conclusions, but which, as it seems to us, was overwhelming in its weight.

(b) It is further claimed that the verdict was wrong and should have been set aside because, independent of any special warning, the plaintiff's intestate knew or ought to have known

of the danger and, therefore, must be held to have assumed the risk. This we think was a question for the jury. There is, it is true, abundant evidence to show that the trestle was unsafe, but the particulars wherein it was unsafe were not so open and obvious, and the manifestation of its weak and rickety condition not so apparent and continuous, as to enable us to say, as a matter of law, that Whetzel, whose duty only occasionally required him to pass over the trestle, must be charged with knowledge of the danger.

(c) The remaining grounds upon which we are asked to say that the verdict was contrary to the law and the evidence is that, as defendant alleges, Whetzel left the work to which he had been assigned and voluntarily went to another part of the plant and, therefore, cannot recover. There is no merit in this contention. Whetzel was not actually called upon to assist in dumping the car, but it was generally recognized by the men engaged at the pot kilns as a part of their duty to do the very thing which this man was doing at the time he was killed. The regular helper was temporarily engaged elsewhere. It was necessary for Sonner, the dumper, to have a man to help him and would have retarded the very work which Whetzel had immediately in hand if he had not gone to assist in dumping the car. The work which Whetzel thus proceeded, without any special order, to do was within the scope of his employment and was so recognized by the company and its employees. This, in view of all the evidence on the point, was a fair and reasonable, if not an inevitable, conclusion.

2. The second assignment of error challenges the correctness of the judgment on account of the form of the verdict, which was as follows: "We, the jury, find for the plaintiff upon the issues joined and assess her damages at Five Thousand Dollars, to be distributed as follows: Eva R. Whetzel, Two Thousand Dollars, Alfreda Whetzel, One Thousand Dollars, James L. Whetzel, One Thousand Dollars, and Douglas L. Whetzel, One Thousand Dollars. J. Rufus

Zirkle. foreman." The contention is that the verdict is erroneous because it does not state whether $2,000 goes to Eva R. Whetzel in her capacity as administratrix or as widow of H. L. Whetzel, and because the evidence does not show that there is any such person as James L. Whetzel. It does appear that Eva R. Whetzel was the widow and that Whetzel left three children, whose names were Alfreda, Leslie and Douglas. The jury seems to have substituted the full name "James L." for "Leslie." We do not perceive that there can possibly be any prejudice to the defendant from the form of verdict. No objection was made at the time of its rendition, when, if necessary, the irregularity could easily have been corrected. Verdicts are to be liberally construed, and upheld unless so defective in form as to be uncertain in meaning. Burks' Pl. & Pr., sec. 302, p. 557, and cases cited.

3. The third assignment of error complains of the action of the court in modifying an instruction which the defendant asked for and which in its modified form was as follows: "The court instructs the jury that where a servant who has been assigned to work at a particular place, to do a particular job, voluntarily goes away from his post of duty and is injured or killed in consequence thereof, he, or, in the event of his death, his personal representatives, has no remedy against the employer. So that if the jury believes from the evidence that Harry Whetzel, the deceased, was on the 31st day of July, 1913, assigned to the work or job of filling pot kilns, and that the place where such work was to be done was a reasonably safe position, but that he voluntarily *and not within the scope of his duties,* and without the direction of the defendant, or its manager, superintendent or boss, *its knowledge or consent,* left such position and voluntarily rode over the trestle on a loaded truck or car, and was injured by the falling in of said trestle, the defendant cannot be held liable for the injury thereby caused, and you should find for the defendant." The italicized words constitute the only modification of the instruc-

tion. It appeared at the argument that the words, "its knowledge or consent," were in the instruction as originally requested by the defendant, so that the objection is narrowed down to the words, "and not within the scope of his duties." It has already been shown that there was evidence tending to show that what Whetzel did in leaving the work to which he had been assigned was within the scope of his duties, and the instruction would have been improper and unfair to the plaintiff without the amendment.

4. The court instructed the jury also as follows: "The court further instructs the jury that if they believe from the evidence that Whetzel knew that the trestle was dangerous, or was in a position to have discovered that it was defective or dangerous, by the exercise of ordinary care, then, in that event, whether assigned to do any work, or believing that it was his duty to go upon the trestle, and as a consequence thereof, he met his death, then the estate of the said Whetzel cannot recover in this case, *but where an employee adopts the usual method of performing his work, which with the knowledge and acquiescence of the employer has been usually and generally adopted by himself and the other employees on other occasions, he has the right to assume that the master has used ordinary care for his protection, and cannot be held liable for adopting such method unless he knew, or by the exercise of ordinary care ought to have known, of the danger of so doing."* This instruction was practically the same as Instruction No. 7, asked for by the defendant, except that the court added the italicized words, and this amendment constitutes the ground of the fourth assignment of error.

The objection is, first, that the amendment seems to state, as a conceded fact, that riding cars over the trestle was the usual method adopted by the employees, and, second, that the plaintiff's own witnesses claimed that the trestle was defective and unsafe, and that all of its employees knew or ought to have known this fact. With reference to the first objection, we

think the language used did not imply, or tend to lead the jury to believe that it implied, the assumption of any fact, but merely stated a correct proposition of law, leaving it to the jury to apply the same to the evidence; and with reference to the second objection, we have already seen that the evidence was not such as to charge the plaintiff's intestate, as a matter of law, with the assumption of the risk.

5. The court refused to give the following instruction asked for by the defendant: "The court instructs the jury that it is their duty to try this case without being influenced by sympathy, or the fact that Whetzel met his death, as the jury as much as the court are under the solemn obligation of an oath to decide according to the law and the facts, and without negligence by the defendant it cannot be held pecuniarily liable, and even if the defendant has been negligent, if the plaintiff's negligence contributed to any extent to his death, his personal representative cannot recover against the defendant."

It would not have been error to give this instruction in the present case, but it by no means follows that it was error to refuse it. Other instructions fully covered the theory of contributory negligence. As to the other features, the trial court stated that it had observed no tendency on the part of the jury to disregard their oath, and no occasion for the instruction, and thought that it might have a misleading effect. Instructions of this character are generally held to be within the discretion of the trial court, and we do not think that the defendant could have been prejudiced by the refusal to give this one. *Central &c. R. Co.* v. *Andrews,* 41 Kansas 371, 21 Pac. 276; *Birmingham Fire Ins. Co.* v. *Pulver,* 126 Ill. 329, 9 Am. St. Rep. 598; *State* v. *Talbot,* 73 No. 347.

6. The court permitted the witness, Crismore, to testify, over the objection of the defendant, to other accidents which he claimed had happened on the trestle on which Whetzel was killed. The defendant, as mentioned by the lower court in the bill of exceptions, was relying on contributory negligence of the

plaintiff's intestate, and in support of that defense undertook to show that the decedent could have walked upon the trestle behind the car instead of riding thereon. It offered evidence in support of this contention and obtained instructions upon the theory of the duty of the plaintiff's decedent to follow the safer method than the one he did. It was in this aspect of the case that the evidence was admitted, and, we think, properly so.

7. The court permitted the witness, Senseney, to testify concerning the condition of the trestle, when, as alleged by the defendant, the witness was merely a housebuilder and barnbuilder and was not competent to testify as an expert. It appeared in evidence that the trestle was a simple structure and that the witness was a practical builder. The question was one which addressed itself to the discretion of the court, and we do not see anything to indicate that this discretion was abused.

8. The court allowed the witness, Senseney, who was being examined as to the condition of the trestle, to testify incidentally as to other accidents thereon. The reference to these accidents was properly admitted under the circumstances, because they tended to show the condition of the trestle and to charge the defendant, whose superintendent knew of them, with knowledge of that condition. The jury were cautioned that the condition of the trestle, either before or subsequent to the accident, was only to be considered as it tended to show the condition at the time of the accident. There was no error in admitting this evidence. See Labatt Master and Servant, p. 4824 and cases cited; *C. & O. Ry. Co.* v. *Christian,* 110 Va. 723, 727, 67 S. E. 345; *Washington, &c., Co.* v. *Trimyer,* 110 Va. 856, 67 S. E. 531; *Dist. of Col.* v. *Arms,* 107 U. S. 526, 2 Sup. Ct. 840, 27 L. Ed. 618.

9. The court permitted a witness named Crabill, a member of the coroners' inquest which inquired into the cause of Whetzel's death, to testify as to matters which came under his personal observation while acting as a juror at the inquest, and it is contended that this is error. The matters to which

he testified were pertinent. We are unable to perceive any ground whatever, and none was suggested to us, upon which the objection may satisfactorily rest.

10. Mrs. Whetzel, the widow, after having testified in full, was recalled and, over the objection of defendant, in answer to a question as to how her husband's death affected her, was permitted to say that it made her very sad and caused her to feel that she didn't care to live. The widow was entitled to have the jury take into consideration her sorrow and mental suffering, and, while we do not see that there was any necessity in this case for asking the question, we do not think that there was any error in admitting the testimony.

11. This brings us to the eleventh and last assignment of error. The defendant undertook to prove by the witness, Emmert, that Richards, the superintendent, had in his presence ordered men not to ride on the cars, and the court excluded this testimony. It clearly appeared that there was no relevancy in the evidence, because the witness was speaking of cars used in lifting rock out of the quarries upon a steep track where there was no trestle and in a different department of the operation. As the court pertinently stated in the bill of exceptions upon which this assignment is based: "The quarry men had nothing to do with the operation of the cars. On the other hand, the fullest liberty was given to defendant to introduce testimony of any instructions about the operation of the cars over the trestle prior to the accident."

Upon the whole case, we are of opinion that there was no error in the judgment. The fullest opportunity was given to the defendant to develop its defense; the instructions were clear, fair and comprehensive upon the defendant's theory of the case; and the evidence warranted the verdict.

*Affirmed.*